UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MERIDIAN FINANCIAL ADVISORS LTD., ) | |
| d/b/a The Meridian Group, as Receiver for ) | |
| OCMC, Inc., and PNC Bank, N.A., ) | |
|     Plaintiffs, ) | |
| ) | |
| vs. ) | 1:07-cv-995-LJM-TAB |
| ) | |
| JOSEPH A. PENCE *et al.*, ) | |
|     Defendants. ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND FOR SANCTIONS

This matter is before the Court on defendant's, Joseph A. Pence ("Pence"),[1] Motion to Dismiss and for Sanctions ("Motion for Sanctions").[2] Dkt. No. 269. Pence seeks dismissal of this case as a sanction for the alleged misconduct of plaintiff, Meridian Financial Advisors LTD ("Meridian" or "Meridian"). *Id.* at 1. Defendants also seek attorney's fees and costs. *Id.* at 2.

Pence alleges that a former defendant, Ann Bernard ("Bernard"), entered into a secret cooperation agreement with Meridian and its counsel. As part of the agreement, Bernard was allegedly providing Meridian with privileged information that Bernard obtained

---

[1] Originally, defendants, Daniel Rohn ("Rohn"), individually and d/b/a DDR; Robert Treash ("Treash"), individually and d/b/a Zandt; Graham Cohen ("Cohen"), individually and d/b/a GCA; Spencer Zimmerman ("Zimmerman"), and Brad Benge ("Benge"), joined this Motion. However, after settling with Meridian, each of these defendants withdrew from this motion. Therefore, Meridian's Motion to Preclude (Dkt. No. 410) is **DENIED AS MOOT**.

[2] Meridian argues in its Response that Pence did not comply with Local Rule 7.1. Initially, the Court notes that Pence's motion is not based upon Rule 11 or attorney disqualification. *See* S.D. Ind. L. R. 7.1. In any event, the Court concludes that Pence substantially complied with rule's requirements. Therefore, Meridians argument is without merit.

as a result of her relationship with original co-defendants Pence and Benge, all of whom were jointly represented by the same counsel.  Pence also alleges that Meridian accessed Pence's private email accounts from which Meridian gathered privileged communications between Pence and his attorneys.  Finally, Defendants allege that Meridian failed to properly disclose the existence of electronically stored information ("ESI"), including 250,000 emails (the "secret emails"), in its Initial Disclosures.

On March 25, 2010, the parties appeared with counsel for a hearing on Pence's Motion for Sanctions.  Now, having considered the parties' briefs and the evidence contained therein, the testimony and evidence presented at the hearing, and the arguments of counsel, for the reasons stated herein, Pence's Motion for Sanctions is **GRANTED in part and DENIED in part**.[3]

## I. <u>BACKGROUND</u>

### A. PROCEDURAL HISTORY

OCMC was a communications service provider that provided operator-assisted and long distance telephone calls.  Dkt. No. 287 at 7; *see also* Dkt. No. 117 ¶ 30.  Pence was the President, CEO, and a member of the Board of Directors of OCMC. Dkt. No. 117 ¶ 2.  Benge was the Vice-President of Sales and Assistant Secretary of OCMC.   *Id.* ¶ 4.  Bernard was the General Counsel and Secretary of OCMC.  *Id.* ¶ 3.  Rohn, Treash, Cohen,

---

[3] The Court concludes that the submission of proposed findings of fact and conclusions of law from the parties is unnecessary.  Therefore, Meridian's motion (Dkt. No. 413) for leave to file proposed findings of fact and conclusions of law is **DENIED**.

and Zimmerman all served as employees of OCMC. *Id.* ¶¶ 18-21. The remainder of the defendants are businesses that are in some way related to the individual Defendants.

On May 11, 2006, PNC Bank, National Association ("PNC") sued OCMC, Inc. ("OCMC"), for amounts due under a revolving credit and security agreement between the parties. *PNC Bank v. OCMC*, 1:06-cv-00755 ("*PNC v. OCMC*, 06-755"), Dkt. No. 1. On May 12, 2006, the Court appointed Meridian as the receiver for properties and assets of OCMC in favor of PNC. *PNC v. OCMC*, 06-755, Dkt. No. 15 ¶ 9. That same day, Pence, Benge, and Bernard resigned from OCMC. Dkt. No. 287 at 9.

On July 17, 2006, William Schorling of Buchanan Ingersoll & Rooney PC ("Buchanan Ingersoll") wrote a notice of claim and demand for monetary damages letter on behalf of PNC to Pence, Benge, Bernard, and several other former officers or directors of OCMC. Dkt. No. 295-4 at 21-24. At this time, Bernard was the attorney for BT&M, a company owned by Pence, Benge, and Bernard. March 25, 2010, Hearing Transcript (hereinafter, "Tr.") at 11, 44, 140. She also did personal legal work for Pence. *Id.* at 44. Pence asserts that he, Benge, and Bernard jointly retained Jeffrey Gaither ("Gaither"), Theresa Ringle ("Ringle"), and the law firm of Bose McKinney & Evans, LLP ("BME"), on or about July 26, 2006, to represent them in this matter. Dkt. No. 295-3 ¶ 8; *see also* Dkt. No. 357-5. On August 7, 2006, Bernard sent a notice of claim letter to Chubb Insurance on behalf of herself, Pence, and Benge, as former officers of OCMC, to advise the insurer of PNC's demand letter and request that BME be approved to defend them. Dkt. No. 295-4 at 20.

At the time BME agreed to represent Pence, Benge, and Bernard, Gaither did not believe there was a conflict between any of them.[4]  *Id.* at 54.

On July 31, 2007, Meridian filed suit against Defendants—who are officers, directors, and employees of OCMC and their related businesses—for breach of fiduciary duties, conversion, criminal conversion, theft, criminal mischief, deception, computer tampering, tortious interference with a contract and with a business relationship, unfair competition, civil conspiracy, and various other violations of the law.  *See* Dkt. Nos. 1, 117.  At the time, Meridian was represented by Jay Jaffe ("Jaffe") and Kevin M. Toner ("Toner").  At the end of September 2007, Jaffee and Toner withdrew and Jeffrey McDermott ("McDermott"), Marc Quigley ("Quigley"), and Greg Small of Krieg DeVault LLP ("Krieg DeVault") filed appearances on behalf of Meridian.  Dkt. Nos. 30-33.  On August 17, 2007, Gaither and Ringle filed appearances on behalf of Pence, Benge, and Bernard.   Dkt Nos. 16, 17.

On October 2, 2007, Meridian took Pence's deposition in the case *PNC v. OCMC, Inc.*, 1:06-cv-755.   Dkt. No. 286-9.   On October 3, 2007, Meridian took Bernard's deposition.  Dkt. No. 357-1.  On October 4, 2007, Meridian took Benge's deposition.  *See* Dkt. No. 286-7 ¶ 6.

On April 18, 2008, PNC filed a complaint against Pence, Benge, Bernard, and several other former employees of OCMC for fraud and civil conspiracy in *PNC Bank, Nat'l Assoc. v. Pence, et al.*, 1:08-cv-502 ("*PNC v. Pence*").  An engagement letter, dated April

---

[4] On March 7, 2008, Gaither and Ringle also filed appearances on behalf of defendant, BT&M in this case.  Dkt. Nos. 94, 95.  On May 5, 2008, Ringle and Gaither filed appearances on behalf of Pence, Benge, and Bernard in this case.  Dkt. Nos. 13, 14.  On May 23, 2008, Ringle and Gaither filed appearances on behalf of defendant, Zimmerman in this case.  Dkt Nos. 124, 125.

30, 2008, from Ronald Elberger of BME indicates that Pence, Benge, and Bernard were represented by BME in *PNC v. Pence*, 08-502, as well as in this case.  Dkt. No. 295-4, Ex. F.

## B.  THE SECRET EMAILS

In June of 2006, Meridian provided the computer hard drives used by Pence, Benge, Bernard, Treash, Rohn, Cohen, and Zimmerman at OCMC to PNC's security department for inspection.  Good Aff. ¶ 9.  Meridian learned that emails and documents had been deleted from various hard drives.  *Id.* ¶ 10.  Meridian and PNC recovered approximately 250,000 emails from these hard drives as well as from the OCMC server.  *Id.* ¶ 10.

The deadline for producing Initial Disclosures in this case was May 14, 2008.  Dkt. No. 111.  On that date, Meridian filed its Notice of Filing Rule 26(a) Initial Disclosures.  Dkt. Nos. 114, 115.  This disclosure listed "All communications, or other documents to, from, by and/or between any Defendants" and "Emails, documents and corporate minutes provided by Ice Miller LLP."  Dkt. No. 295-9 ¶ (B)(10), (B)(15).  The Initial Disclosures did not provide any more descriptive information regarding the existence of the secret emails in Meridian's possession.

On May 16, 2008, Good and McDermott participated in a settlement conference during which they informed the Magistrate Judge that Meridian "had discovered thousands of emails that had been previously deleted on the OCMC server, many of which supported or confirmed the factual allegations and legal theories set forth in the Receiver's pleadings." Good Aff. ¶ 36.  On June 6, 2008, Ringle wrote a letter to Small of Krieg DeVault regarding the lack of "a description by category as required by Rule 26(a)(1)(ii) of any electronically

stored information (ESI) other than emails to be furnished to the Receiver by Ice Miller."

Dkt. No. 295-10.  She further wrote: "Given that there are computer tampering allegations

raised by the Receiver, we are entitled to know the basics of what categories of ESI exist

and where it is located."  *Id.*  On July 24, 2008, Meridian supplemented its Initial

Disclosures, indicating that it had:

> 17.   Electronically stored information ("ESI") contained on the Optiview Database and Application Server and Oracle Financial Database Server, Technology Center Associates II, LLC, 801 Congressional Blvd., Suites 100, 200, 250, Carmel, Indiana, 46032.

> 18.   ESI contained on the Administrator hard drive, former OCMC employees' hard drives including, but not limited to, Joe Durkee, Ron Harris and Victor Krayterman and the Apple e-mail server, The Meridian Group, 223 4th Avenue, Suite 1700, Pittsburgh, Pennsylvania 15222-1719.

> 19.   ESI contained on the Receiver's server and computer hard drives, The Meridian Group, 223 4th Avenue, Suite 1700, Pittsburgh, Pennsylvania 15222-1719.

> 20.   ESI contained on OCMC hard drives, servers and other mediums, PNC Bank, National Association, 5th Avenue and Wood Street, Pittsburgh, Pennsylvania.

Dkt. No. 311-8 ¶¶ (B)18-20.  Meridian did not physically provide any of this information to

Defendants.  *See* Dkt. No. 298 at 7 n.16.  Furthermore, Good summarized Meridian's

strategy as follows:

> [f]or strategic reasons, [Meridian] and its attorneys decided not to let the Defendants know that [Meridian] had discovered the 'secret emails' from the OCMC hard drives and email server until the Defendants made formal discovery requests for the documents. [Meridian] believed that the Defendants thought that this evidence had been destroyed and [Meridian] wanted to lock the Defendants into sworn testimony before the existence of the emails was revealed.

Good Aff., Dkt. No. 286-3 ¶ 27.

### C.  ANN BERNARD

After Meridian took the depositions of Pence, Benge, and Bernard, Meridian decided to approach Bernard about the possibility for settlement.  Dkt. No. 286-3 ¶ 28.  On January 21, 2008, McDermott informed Gaither that Meridian wanted to meet alone with Bernard to discuss a potential settlement.  Dkt. No. 295-2 ¶ 3.  McDermott made clear that neither Pence nor Benge could know that settlement negotiations were taking place.  *Id.* McDermott understood that Gaither's engagement letter with his clients permitted Gaither to participate with Bernard in these confidential discussions without disclosing the discussions to his other two Pence and Benge.  Dkt. No. 286-7 ¶ 8.  McDermott never thought that Bernard, Pence, and Benge had entered into a joint defense agreement with Gaither.  *Id.*

In January 2006, Gaither informed Bernard that Meridian was interested in settling with her.  Dkt. No. 286-5 ¶ 10.  Contrary to McDermott's request, Gaither informed Pence and Benge of of McDermott's request to speak with Bernard.  Hearing Tr. at 13-14, 133. Benge and Pence gave Gaither permission to represent Bernard during settlement discussions. Tr. at 133.  However, after Bernard and Gaither discussed the matter, Bernard understood that she would represent herself during any settlement discussions with Meridian.  Dkt. No. 286-5.  In fact, Gaither told Bernard that "he would see the details if and when there was a settlement agreement or something was filed with the Court."  *Id.* Bernard then contacted McDermott and told him that Gaither had agreed to let her meet with him outside of Gaither's presence.  *Id.*  ¶ 11. According to Bernard, "Gaither did not put any restrictions or conditions on [her] discussions with Meridian and its attorneys," and "neither Gaither nor Ringle ever asked [her] about the substance of any of [her] discussions

with Meridian and its counsel." Dkt. No. 286-5 ¶ 12.  However, Gaither did not believe that any other meetings would occur after the February 20, 2008, initial meeting.  Dkt. No. 295-2 ¶ 5; Hearing Tr. at 60-63.

On February 20, 2008, Good; Thomas Von Lehman ("Lehman"), an employee of Meridian; and McDermott and Quigley, Meridian's counsel at that time, met with Bernard at Krieg DeVault's Carmel, Indiana office.  *Id.* ¶ 29.  Just prior to the meeting, McDermott called Gaither who again consented to Bernard meeting with McDermott outside of Gaither's presence.  Dkt. Nos. 286-7 ¶ 18; 295-2 ¶ 4.  At one point during the initial meeting, Good "told Bernard that PNC believed she and others had committed bank fraud and, if that was the case, PNC wanted to see them go to jail."[5]  Good Aff., Dkt. No. 286-3 ¶ 30.  Good told Bernard that Bernard "would be required to demonstrate to Meridian that she would be cooperative, candid[,] and forthright with regard to information which she was asked to provide" and that Good had "anticipated that it would take several meetings and discussions with Bernard for [Meridian] and its counsel to determine whether she was actually being cooperative and forthright and that this was not the type of settlement that could be completed immediately."  *Id.* ¶ 31.

After Bernard's initial meeting with Meridian, Meridian and Bernard entered into an oral cooperation agreement, pursuant to which Bernard provided Meridian with access to

---

[5] However, according to Bernard, "[a]t no time did Meridian's attorneys threaten to have [her] criminally prosecuted."  Dkt. No. 286-5 ¶ 18, *but see* Dkt. No. 270-3 at 1-2 (indicating that before Meridian's second anticipated meeting with Bernard, Von Lehman's suggested plan was to "walk in 10 minutes late tonight, after [Bernard] is comfortably situated in the room, and tell [her] to pack up her stuff, go home and inform her family that they are going to lose everything in a lawsuit and she will be going to prison.")

both her OCMC and private email accounts.  Dkt. No. 400 ¶ 9.  In addition, Bernard met

with Meridian and its attorneys on several occasions and provided them with "historical and

factual information about the operations of OCMC, the directors' roles, the officers' roles,

accounting practices, as well as the formation of some other entities, such as BT&M,

Navicomm[,] and ICOE."[6]  286-5 ¶ 13.  Bernard turned over emails from OCMC's server

and from her Gmail account.[7]  Dkt. Nos. 286-5 ¶ 16; 286-3 ¶ 33.  Accordingly, Meridian had

access to communications between Ringle, Gaither, Bernard, Pence, and Benge regarding

this litigation, including: a January 5 and 6, 2008, email exchange regarding the state of the

litigation, insurance money, and Benge's possible dissatisfaction with his attorneys; a

January 28, 2008, exchange about insurance litigation funds; a March 27, 2008, email

about the timing of certain litigation events; and an April 2, 2008, email exchange regarding

and including a draft of a document to be filed with the Court.  Dkt. Nos. 273-1 – -5.  In

addition, Meridian had access to a December 4, 2007, email between Bernard, Pence, and

Ringle, regarding Pence's life insurance policy.  Dkt. No. 273-11.

   According to Good, these emails did not help Meridian because Meridian did not use

them in their case against Pence and, to the best of her knowledge, Meridian did not share

any privileged emails with its attorneys.  Dkt. No. 286-3 ¶ 33.  However, a spreadsheet,

which was internally prepared by Meridian, lists many of the privileged emails that Bernard

---

[6] According to Bernard, Meridian's attorneys never asked her to disclose any communications between herself, Gaither, Ringle, and BME.  Bernard Aff., Dkt. No. 286-5 ¶ 14.

[7] Bernard attested that she knew her Gmail account contained privileged emails and that she "willingly and knowingly waived [her] attorney-client privilege with Gaither, Ringle and their law firm."  Dkt. No. 286-5 ¶ 16.

produced to Meridian pursuant to her cooperation agreement.  *Compare* Dkt. No. 273 *with*

Dkt. No. 295-16.  The spreadsheet notes that many of these emails were to be forwarded

to "Jeff & Bill," including several emails between Gaither and Ringle and Bernard, Pence,

and Benge.  *Id.*

On August 26, 2008, Pence served Interrogatories and Requests for Production of

Documents.  *See* Dkt. No. 250.  Sometime prior to September 23, 2008, the date they filed

their Motion to Withdraw, Gaither and Ringle found out about the settlement negotiations

between Bernard and Meridian.  Dkt. No. 179.  On September 25, 2008, the Court granted

Gaither and Ringle's Motion to Withdraw.  Dkt. No. 183.

On October 1, 2008, Bernard and Meridian executed a settlement agreement.  Dkt.

No. 407-3.  As part of this settlement, Bernard expressly agreed to:

> cooperate fully with Meridian and its counsel in connection with any matters
> relating to Merdian, OCMC, the Lawsuit, or any other matter in which
> Meridian or its counsel determines that Bernard has information or is a
> relevant witness.  Bernard expressly agrees that such cooperation includes,
> among other things, meeting with Meridian and its counsel, providing
> Meridian and its counsel with information requested, consenting to interviews,
> and appearing as a witness in the Lawsuit . . . .

*Id.*  She was not required to pay any money as part of the settlement.  Good Aff. ¶ 37.  On

October 15, 2008, Bernard and PNC Bank entered into a similar settlement.  Dkt. No. 270-

2.  On October 23, 2008, Meridian and Bernard filed a Joint Motion to Dismiss Bernard in

this case, which the Court granted on October 24, 2008.  Dkt. Nos. 203, 204.  Likewise, on

November 11, 2008, PNC and Bernard filed a Joint Motion to Dismiss Bernard in *PNC v.*

*Pence*, which the Court granted on November 25, 2008.  *PNC v. Pence*, 1;08-cv-502, Dkt.

Nos. 66, 72.  Meridian and PNC referred Pence, Benge, and other senior management of

OCMC for federal prosecution, but PNC explicitly "exclude[d] Bernard from the list of those

10

who it would like to see prosecuted for these crimes" because "Bernard ha[d] been helpful in providing PNC and Meridian with information about Pence's scheme to defraud PNC." Dkt. No. 270-10 at 1 n.1.

On or about January 30, 2009, Meridian received a subpoena in the related *PNC Case* from attorney Stallings.  Von Lehman Aff. ¶ 23.   On February 19, 2009, Stallings entered an appearance on behalf of Rohn, Treash, and Graham.  Dkt. No. 251.  On February 20, 2009, Berardinelli entered an appearance on behalf of Benge.  Dkt. No. 254.  On March 17, 2009, Ronald Waicukauski and Jana Strain entered appearances on behalf of Pence.  Dkt. Nos. 265, 266.

Sometime in March 2009, Meridian produced 56 gigabytes of discovery, including the compact discs provided by Ray.  Dkt. Nos. 270 at 8 n. 4; Von Lehman Aff. ¶ 23.  I gathering these materials for production, Good "looked at what was on the server to try to determine whether certain things were privileged based on the guidance from [her] attorneys."  Good Dep. at 42, Dkt. No. 270-7.  Included in this production were emails from January 2005 between Pence and his attorney Ronald Ellenberger.  Dkt. No. 273-18.  Pence used an msn.com email address, which was presumably personal.  *See id.*

On April 22, 2009, Stallings sent a letter to PNC's attorney, John Leathers ("Leathers") of Buchanan Ingersoll, to inquire about his knowledge regarding the events at issue in this Motion for Sanctions.  On June 8, 2009, Leathers responded, in part:

> The Ms. Bernard information which [Meridian]'s counsel provided to PNC's counsel falls into two categories.  She provided: (1) emails between herself and her counsel; (2) emails among herself, counsel and co-defendants.  My understanding from Mr. Burns is that you have already provided the actual documents in (1), so I am not going to provide a log of those.  Enclose as BIR-PNC 00016-00018 you will find a log of (2), the materials which were returned to Receiver's counsel without copying or use by PNC.  This log was

11

made in 2008 by our personnel at my direction when I was advised of the receipt of these materials from [Meridian].   The method of determining privilege was simple.   Ms. Bernard may waive the privilege between herself and her counsel so that her provision of those documents to Meridian rendered them non-privileged.   Restatement (Third) of the Law Governing Lawyers, §§ 75(1) and 78(1).   Ms Bernard could not waive the privilege of her co-defendants, she was not entitled to provide those materials to Meridian and PNC refused to make any use of such documents.   Restatement (Third) of the Law Governing Lawyers, § 75, comment e.

Dkt. No. 407-1 at 2-3.   At the Hearing, McDermott provided a copy of a letter sent to Gerald Burns of Buchanan Ingersoll to clarify that it was Meridian, not BME, that had provided the Bernard emails to PNC.   Krieg DeVault Ex. 1.   McDermott also testified that it had been his understanding, based on a consultation with the professional standards chairperson at his firm, that the privileged emails were from Bernard and that she had waived her privilege.   Tr. at 102, 113.

## D.  ERIN RAY[8]

Erin Ray ("Ray") worked as the Director of Integrated Technologies for OCMC from February 2005 to March 2006.   Ray Aff. ¶ 3.   Ray resigned from OCMC because she

---

[8] George Bills represented Ray for her July 7, 2009, deposition and for the submission of her June 30, 2009, affidavit. Ray Dep. at 2, 10, 20.   On July 31, 2009, George Bills appeared in this case on behalf of Meridian, and he represented Meridian at the March 25, 2010, Hearing.   Dkt. Nos. 327, 418.   The Court is perplexed by Bills's representation of both Ray and Meridian, particularly given that Meridian distances itself from Ray in its Surreply.   For example, Meridian states: "Meridian agrees that Ray's conduct in deleting emails was wrong and certainly would never sanction or condone such conduct. . . . Notwithstanding the impropriety of Ray's conduct, Meridian is not liable for Ray's actions."   Dkt. No. 312 at 16.   Likewise, during closing arguments at the Hearing, Bills emphasized that Ray was an independent contractor and that she was not acting at the direction of Meridian or Good.   Tr. at 172-73.   Admittedly, the Court does not have all the facts surrounding Bills's relationship with both clients, but given the concerns in this case, this dual representation is questionable given the likelihood of conflicting interests.

disagreed with the decision to terminate Lester Li, the Chief Financial Officer of OCMC. Ray Aff. ¶ 4; Ray Dep. at 28.

Several weeks after the Court appointed Meridian as receiver, Meridian contracted Ray to assist Meridian and PNC "with their efforts to identify and recover assets of OCMC, including investigation of suspected wrongdoing by the former employees, officers[,] and directors of OCMC." Ray Aff. ¶ 5. Both Ray and Margaret M. Good ("Good"), President of Meridian, considered Ray to be an independent contractor of Meridian, not an employee. Good Aff. ¶ 12; Ray Aff. ¶ 6.

In early June 2006, Meridian gave her unfettered access to OCMC's premises. Ray Dep. at 49-50. Ray understood that her job was to look for any relevant information on OCMC's servers. *Id.* at 51-53. Ray did not preserve any information on the servers that she accessed at that time. *Id.* at 55. Ray told Good that Ray found the password for and accessed Pence's MacMail email account ("the MacMail account"). *Id.* at 58; Ray Aff. ¶ 9; Good Aff. ¶ 13. Her invoice to Meridian describes that on June 19, 2009, Ray "[a]ccessed emails information from Apple email of J.Pence. Review 111 emails, printed and faxed to M.Good office in Pittsburgh." Dkt. No. 303. Although Good directed Ray to stop accessing the MacMail account, Good Aff. ¶ 15; Ray Aff. ¶ 11, Ray continued to do so. Dkt. Nos. 295-3, 295-4. On June 27, 2006, Ray sent Good an email entitled "JP mac accounts and alias . . . interesting," which listed the alias names of Pence's MacMail account. Dkt. No. 303 at 4. On August 7, 2006, Ray told Good: "Maggie - I loaded into Joe's mac email today and he has deleted all but 14 of the 132 emails he had in his inbox. Erin." *Id.* at 7.

Pence used OCMC's American Express card to purchase the MacMail account in 2005, but he attested that he believes he paid this money back to OCMC. Dkt. Nos. 285-1;

295-3 ¶ 5.  Pence paid the renewal fees for 2007, 2008, and 2009.  Dkt. No. 295-3 ¶ 5.

OCMC had an email privacy policy, which provided that email messages were the property

of OCMC, not the sender or receiver; that the email system should be used for business

purposes only; and that OCMC reserves the right to read, collect, and use emails.

Bernard Aff. ¶ 5, Dkt. No. 286-5 ¶ 5.

      Pence also had a personal, free Gmail account.  Dkt. No. 295-3 ¶ 6.  Ray was able

to access Pence's Gmail account by changing his password, and she downloaded several

emails contained in the account.  Ray Dep. at 83-87; *see, e.g.*, Dkt. No. 295-4.  Ray

changed the password and deleted emails about five different times.  Ray Dep. at 87.

Pence did not authorize anyone at Meridian's office to access this account.  *Id.* ¶ 4.  In

addition, neither Meridian, Good, nor Meridian's attorneys authorized Ray to delete these

emails.  In addition, they did not know that Ray deleted these emails prior to Pence's

Motion for Sanctions.  Ray Aff. ¶ 15; Good Aff. ¶ 18; McDermott Aff. ¶ 40; Quigley Aff. ¶ 28;

Von Lehman Aff. ¶ 8-9.

      At some point after May 29, 2008, Ray turned over a stack of emails to Special

Agent Ken Wiloch ("Agent Wiloch") of the U.S. Postal Inspectors after Agent Wiloch made

an informal request to Good, who relayed the request to Ray.  Ray Dep. at 15-16; Dkt. No.

303 at 17.  After Ray printed the emails from her computer and turned them over to the

U.S. Postal Inspectors, she used a software called Shred to clean her hard drive, deleting

the emails from her computer.  Ray Dep. at 13-14.

## II.  <u>STANDARD</u>

The Court "has the inherent power to sanction for conduct that abuses the judicial process. . . . The power is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993) (citations omitted).  Generally, the Court must exercise its inherent powers with restraint and discretion.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).  But, the Court has "the ability to fashion an appropriate sanction for conduct [that] abuses the judicial process."  *Id.*  In doing so, the Court must consider the egregiousness of the conduct in question in relation to all aspects of the judicial process.  *See Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 758-59 (7th Cir. 2005).  The most severe sanction, default, is available "'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'"  *Id.* (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976)).  The Court may award attorneys' fees from both the client and the attorney under its inherent authority.  *See Chambers*, 501 U.S. at 45. In addition, the Court may assess attorneys' fees against counsel for wilful disobedience or bad faith.  *See id.; Maynard*, 332 F.3d at 470-71.

Sanctions for failing to disclose or supplement discovery are covered by Rule 37(c)(1).  Fed. R. Civ. P. 37(c)(1).  Generally, courts consider four factors when determining an appropriate sanction:  the prejudice to the moving party, the prejudice to the judicial system, the need to punish the disobedient party, and the need to deter similar conduct in the future.  *See United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002);

*Krumwiede v. Brighton Assoc., LLC*, No. 05 C 3003, 2006 WL 1308629, at *9, *11 (N.D. Ill. May 8, 2006).  No one factor is dispositive.  *See Reyes*, 307 F.3d at 458.  Any sanction under Rule 37 "'must be proportionate to the circumstances surrounding the failure to comply with discovery.'"  *Langley ex rel. Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 2003) (quoting *Crown Life Ins. v. Craig*, 995 F.2d  1376, 1382 (7th Cir. 1993), citing *Newman v. Metro. Pier & Expo. Auth.*, 962 F.2d 589, 591 (7th Cir. 1992)).

## III. <u>DISCUSSION</u>

The Court's ability to sanction a party for conduct that abuses the judicial process is derived from the Court' duty to ensure the just and timely resolution of a dispute on the merits, a duty that is charged not only to the Court but to officers of the Court–attorneys and, as in this case, court-appointed receivers.  Ultimately, the Court concludes that Meridian has abused the judicial process in three ways: first, Meridian failed to timely disclose the ESI, including the secret emails, under Federal Rule of Civil Procedure 26; second, Meridian failed to disclose its access to privileged communications that it received from Ann Bernard; and third, Meridian knew Ray accessed and retrieved Pence's personal email and did not disclose that fact to Pence.  Although the Court concludes that Meridian's misconduct subjects it to sanctions, Meridian's actions have not negated Pence's ability to conduct an effective defense in this matter.  The parties can still reach a just resolution of this dispute on the merits; as a result, a default judgment is not warranted.  Nevertheless, for the reasons discussed below, Meridian shall pay Pence's attorneys' fees and costs incurred in filing this motion and bringing Meridian's unfortunate conduct to the Court's

attention.  Likewise, Meridian is precluded from using evidence that it failed to produce under Rule 26.

First, Meridian violated Rule 26 by not producing the ESI, including the secret emails, by the required deadline.  Rule 26(a)(1)(A)(ii) requires that "a party must, without awaiting a discovery request, provide to the other parties" the following: "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." The purpose of requiring early disclosure under Rule 26 is not only to permit the parties to uncover likely witnesses and issues, but to also allow the parties to evaluate the facts so that trial strategies can be planned and the risks of trial assessed.  When a party intentionally disregards Rule 26, the party needlessly creates added expense and length to the case.

Here, there is little doubt that Meridian knowingly violated Rule 26.  Meridian told the Magistrate Judge about the secret emails at the May 16, 2008, settlement conference and that the emails "supported or confirmed the factual allegations and legal theories set forth in Meridian's pleadings."  Good Aff. ¶ 36.  Therefore, Meridian possessed and knew about these emails at that time, and it intended to use these emails for reasons other than impeachment.  As a result, Meridian was obligated to disclose these emails as part of its Initial Disclosures two days earlier, and their failure to do so violated Rule 26.

Meridian's arguments that it satisfied Rule 26's requirements are not persuasive.  First, Meridian suggests that it made adequate disclosures because it indicated having "[e]mails, documents and corporate minutes provided by Ice Miller LLP"  and "[a]ll

communication, or other documents to, from, by and/or between any Defendants." The Court disagrees. The category "[e]mails, documents and corporate minutes provided by Ice Miller LLP" describes an entirely different set of information. Meridian's disclosure of "[a]ll communication, or other documents to, from, by and/or between any Defendants" is broad enough that it might include some of the ESI contained on the OCMC hard drives, but it fails to provide a location where such communications could be found.

Next, Meridian asserts that it was not required to disclose the existence of the secret emails until the Initial Disclosure deadline. Moreover, Good's statement that Meridian wanted to lock the Defendants into sworn testimony was referring to their October 2007 depositions, which took place before Meridians Initial Disclosures were due. Dkt. No. 312 at 12 ("Placed into context, Meridian elected to take the depositions of Pence, Benge, and Bernard in October 2007, before the Initial Disclosures were due . . ."). This after-the-fact explanation is unconvincing. The October 2007 depositions were not taken in this case but in *PNC Bank, Nat'l Ass'n v. OCMC, Inc.*, 1:06-cv-755-JDT-TAB. *See, e.g.,* Dkt. No. 357-1.[9] Furthermore, Good's affidavit does not state that Meridian intended to keep the secret emails from surfacing until Initial Disclosures, but rather "until the Defendants made formal discovery requests . . . ." It was not until after being prompted by Pence's counsel for more complete and specific information, on July 24, 2008, that Meridian finally disclosed that it had ESI from several OCMC hard drives.[10] Whether this disclosure adequately provided

---

[9] While this case and *PNC Bank, Nat'l Ass'n v. Pence*, 1:08-cv-502, were consolidated for discovery purposes, the case in which the October 2007 depositions were taken was not part of that consolidation.

[10] Between the time Meridian made Initial Disclosures and its July Supplement, at the end of May, Ray provided a stack of emails over to the U.S. Postal Inspectors.

the requisite "category" of information to Pence is questionable, but it does not really matter.  The Court determines that Meridian failed to sufficiently disclose the ESI from the OCMC servers, including the secret emails, by the required deadline.   Meridian's justification–that it wanted to "lock the Defendants into sworn testimony before the existence of the emails was revealed"–does not save its violations, nor has it demonstrated that its violation of Rule 26 was harmless.   *See* Rule 37(c)(1) (excluding evidence not produced under Rule 26 "unless the failure was substantially justified or harmless.").

Second, in addition to Meridian's failure to disclose the ESI, Meridian's relationship and use of Bernard improperly and negatively affected the Court's and parties' ability "to achieve the orderly and expeditious disposition of [this] case[]."  *Barnhill*, 11 F.3d at 1367 (citations omitted). Initially, the Court notes that Pence's argument regarding "Mary Carter Agreements" is misplaced.  A Mary Carter Agreement typically has the following features: secrecy; the agreeing defendant remains as party defendant in the lawsuit; the agreeing defendant's liability is decreased in direct proportion to the nonagreeing defendants' increase in liability; and the agreeing defendant guarantees to the plaintiff a certain amount of money if plaintiff does not receive a judgment against any of the defendants or if the judgment is less than a specified sum.  *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1236 (7th Cir. 1983).  Pence has not sufficiently demonstrated that Meridian's agreement with Barnard satisfies each of these four elements.  *Id.* (rejecting an Mary Carter Agreement argument because the settlement agreement at issue did not satisfy all four "features").  For example, nothing in the evidence suggests Bernard's settlement with Meridian would

---

Presumably some of these "secret emails" were included in that stack.

be altered if Meridian did not receive a judgment in its favor.  Therefore, Pence's argument fails.

In addition, Pence's argument that the agreement between Bernard and Meridian is akin to "spy in the defense camp" cases is not persuasive.  Pence acknowledges that, generally speaking, the "spy in the defense camp" problem arises in the criminal context. *See* Dkt. No. 270 at 27.  Moreover, Pence's reliance on *Dixon v. Comm'r*, 316 F.3d 1041 (9th Cir. 2003), is misplaced.  First, unlike here, in *Dixon* the government was the offending party as is typical in spy in the defense camp cases. The fact that Meridian is an officer of the Court is not without significance or consequence, but Meridian is not the government.  Therefore, Meridian in this case does not have the same power and obligations as the IRS did in *Dixon*.  Second, Meridian disclosed its agreement with Bernard as soon as it was finalized, while the IRS waited until the conclusion of the law suit in *Dixon*.  Third, and along the same vein, Meridian did not employ an overt scheme to defraud the Court, which was the main issue in *Dixon*.  While disclosing the agreement to the Magistrate Judge during a confidential settlement conference is not exactly formal notice to the Court, it does demonstrate that Meridian was not attempting to defraud the Court.  In sum, Pence's argument under *Dixon* fails.

Meridian's approach and continued negotiation with Bernard after their first meeting does not in and of itself subject Meridian to sanctions.  When a plaintiff brings suit against multiple defendants, that plaintiff no doubt has the authority to negotiate with one defendant to better its position with respect to the other defendants.  As such, Meridian was well within its authority to contact Bernard and her counsel to initiate settlement discussions. Pence's suggestion that Meridian created a conflict of interest between Pence, Bernard,

and their co-defendants is not altogether borne out by the facts.  The conflict of interest presented itself the moment Gaither told Pence that Bernard had requested to discuss settlement with Meridian by herself.  Although Meridian's later actions, specifically its access and possible use of privileged communications, would not have reasonably been foreseen by Pence, Pence cannot say Meridian solely caused the conflict that ultimately required him to retain new counsel.  The risk that Bernard's discussions with Meridian would be inconsistent with Pence's interests in this case was, or at least should have been, recognized at the outset, and Pence chose to take it.

Ultimately, Meridian's relationship with Bernard boils down to whether Meridian had a duty[11] to disclose its receipt of the privileged[12] emails between Pence and Gaither.  As the Supreme Court has stated,

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.  Its purposes is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

---

[11] Pence relies heavily on the Indiana Rules of Professional Conduct to inform the Court of Meridian's counsel's duties with respect to Pence and his counsel.  The Court acknowledges that an appearance in this Court brings with it the responsibility to adhere to the rules of professional conduct.  But the rules of professional responsibility do not define the standard of reasonableness against which this Court judges counsels' and the parties' behavior.  Rather, the Court views their actions against the parties' and counsel's general duty to assist the Court in the fair, just, orderly and expeditious disposition of this case.

[12] Meridian's argument that Bernard waived Pence's protection against compelled disclosure of privileged communications between Pence and Gaither is without merit.  *See Reginald Martin Agency v. Conseco Med. Ins. Co.*, 460 F. Supp. 2d 915, 919-20. (S.D. Ind. 2006) (concluding that the common interest doctrine applies in the context of both work product and the attorney-client privilege).

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The protection against compelled disclosure of communications between attorney and client, and by extension work product that contains counsel's mental processes, is critical to the just resolution of cases in an adversarial system of dispute resolution.  Given the importance of the privilege, the Court concludes that Meridian had a duty to inform Gaither that it had seen or received potentially privileged emails, and that its failure to do so subjects it to sanctions pursuant to this Court's inherent authority.

Third, and finally, Meridian knew Ray had accessed Pence's personal email accounts, including the privileged communications contained therein, and failed to disclose that fact to Pence.  The Court rejects Meridian's argument that the email accounts at issue were owned by Meridian.  Although the evidence in the record is somewhat unclear on who paid for the accounts during certain periods, the evidence in the record is sufficient to support a finding that these accounts were for personal use, and therefore not subject to OCMC's email policy.  Moreover, the fact that Ray may have been an independent contractor of Meridian is of little significance.  Whether an independent contractor or employee, Meridian hired Ray to access information for it, knew that Ray accessed and retrieved Pence's personal emails, and knew that Ray did not stop accessing Pence's emails after Good told her to stop.  In that situation, Meridian had a duty to disclose to Pence that Ray had accessed and retrieved several of his personal–and in some circumstances privileged–communications.  Meridian's failure to do so subjects it to sanctions under this Court's inherent authority.[13]

---

[13] The evidence in the record does not indicate that Meridian's counsel knowingly advised their client to act in this manner.  Therefore, the Court declines to enter

As to the appropriate sanction, Pence calls for a default judgment against Meridian. But the Court must exercise its inherent powers with restraint and discretion. *Chambers*, 501 U.S. at 44-45. Here, Pence fails to specifically articulate what prejudice resulted from the misconduct of Meridian and its attorneys that warrants dismissal of the case. Pence's main complaint is a lack of resources, which is remedied by awarding attorney's fees and costs to Pence. Moreover, any prejudice from Meridian's nondisclosure of the secret emails is cured by their exclusion from the evidence that may be presented in this case. The Court's primary concern is reaching the fair and just resolution of this dispute on the merits. Pence fails to explain why or how he cannot effectively defend against Meridian's claims as a result of Meridian's misconduct. Therefore, the Court concludes that a default judgment is not warranted.

---

sanctions against counsel. Moreover, Pence's other arguments for placing sanctions against Meridian or its counsel are rejected.

23

## IV.  CONCLUSION

Pence's Motion to Dismiss and for Sanctions (Dkt. No. 269) is **GRANTED in part and DENIED in part**.  The Court finds that Meridian violated Federal Rule of Civil Procedure 26(a)(1)(A)(ii) by intentionally failing to identify ESI from the OCMC hard drives that Meridian had in its possession and found substantively relevant by the deadline for Initial Disclosures.  As a result, Meridian is precluded from using this ESI in this case.  In addition, Meridian's actions through its relationship with Bernard and Ray have abused the judicial process.  As a result, the Court awards Pence his attorney's fees associated with his representation by BME during the time Bernard was secretly cooperating with Meridian and his attorney's fees and costs associated with investigating and filing this Motion for Sanctions.  The Court otherwise **DENIES** Pence's Motion to Dismiss.

Meridian's Motion to Preclude (Dkt. No. 410) is **DENIED AS MOOT**.  Likewise, Meridian's Motion (Dkt. No. 413) is **DENIED**.

The Court hereby **ORDERS** Pence to submit his application for attorney's fees and costs within twenty-one days of the date of this Order.

IT IS SO ORDERED this 12th day of July, 2010.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution attached.

24

Distribution to:

George William Bills Jr.
LAW OFFICE OF G. WILLIAM BILLS, JR.
gwilliambills@yahoo.com

Kathleen A. Gallagher
ECKERT SEAMANS CHERIN & MELLOTT LLC
kgallagher@eckertseamans.com

Sandy B. Garfinkel
ECKERT SEAMANS CHERIN & MELLOTT, LLC
sgarfinkel@eckertseamans.com

Gregg  Heinemann Jr.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
gheinemann@eckertseamans.com

Max W. Hittle Jr.
KRIEG DEVAULT, LLP
mhittle@kdlegal.com

Thomas  Livingston
OFFICE OF THE FEDERAL PUBLIC DEFENDER
thomas_livingston@fd.org

C. Kent May
ECKERT SEAMANS CHERIN & MELLOTT, LLC
kmay@eckertseamans.com

Craig Morris McKee
WILKINSON GOELLER MODESITT WILKINSON & DRUMMY
cmmckee@wilkinsonlaw.com

Stephen S. Stallings
STALLINGS LLC
sstallings@stallings-law.com

Jana K. Strain
PRICE WAICUKAUSKI & RILEY
jstrain@price-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com

Ann Marie Waldron
awaldron@rwylaw.com

John H. Williams Jr.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
jwilliams@eckertseamans.com

SCOTT HALL
308 Blue Quail Ct.
Bedford, TX 76021