UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MERIDIAN FINANCIAL ADVISORS, LTD. D/B/A THE MERIDIAN GROUP, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) NO. 1:07-cv-00995-LJM-TAB ) |
| JOSEPH A. PENCE, NAVICOMM LLC, NAVICOMM, LTD, ICOE LTD, T3A LLC, BT&M INVESTMENTS LLC, RFE LLC, THE PERISOS GROUP LLC, SCOTT HALL, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER ON DEFENDANT SCOTT HALL'S MOTION TO DISMISS, AND, ALTERNATIVELY, HIS MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendant's, Martin Scott Hall ("Hall"), Motion to Dismiss, and, Alternatively, His Motion for Summary Judgment ("Motion for Summary Judgment")[1] (Dkt. No. 415). Hall seeks summary judgment on Plaintiff's, Meridian Financial Advisors, Ltd. ("Meridian"), conversion claim and dependant liability under the Indiana Crime Victim's Relief Act. Dkt. No. 415; *see also* Dkt. No. 117 (Third Amended Complaint).[2] The Court has considered the parties' submissions, and, for the following

---

[1] Given the nature of Hall's arguments and his inclusion of affidavits, the Court construes his motion as a Motion for Summary Judgment and addresses it accordingly. *See* Fed. R. Civ. P. 12(d) ("If . . . matters outside the pleadings are presented . . . the motion must be treated as one for summary judgment[.]"

[2] In its Third Amended Complaint, Meridian also raises claims against Hall for tortious interference with contract, tortious interference with business relationship, violations of the Indiana Uniform Trade Secrets Act, unfair competition, quantum meruit and unjust enrichment, and civil conspiracy. *See*

reasons, Hall's Motion for Summary Judgment (Dkt. No. 415) is **GRANTED**.

## I. BACKGROUND

This case is one of a number of related cases[3] involving the collapse of OCMC, Inc. ("OCMC"), a Carmel, Indiana based telecommunications company. Meridian files suit in its capacity as the Court-appointed Receiver for OCMC. Dkt. No. 117 at 1.

Hall is a former employee of OCMC who has worked as an independent business owner in the telecommunications industry since approximately 1998. Dkt. No. 416 at 4. Hall is also an employee and the sole owner of a number of entities, including Navicomm, Ltd. ("Navicomm"); ICOE, LCC and ICOE, Ltd. (collectively, "ICOE"); RFE, LLC; and the Perisos Group, LCC ("Perisos") (collectively, the "Hall Entities"). *See generally* Dkt. No. 431-4. All of the Hall Entities are organized under the laws of Nevada. Dkt. No. 416 at 9. Two of the Hall Entities, Navicomm and ICOE, are involved in the conduct at issue in this case. *See generally* Dkt. No. 117.

### A. THE DISPUTED TRANSACTIONS

In 2003, Robert Treash ("Treash") from OCMC contacted Hall regarding a possible business opportunity for Navicomm. Dkt. No. 416 at 5. Treash indicated to Hall that OCMC had some "adult chat business" ("Adult Chat") that the OCMC Board did not want associated with OCMC's name, and OCMC was searching for a buyer willing to purchase

---

*generally* Dkt. No. 117. However, since the parties do not address these claims in their summary judgment briefs, the Court will not address them.

[3] *See also PNC Bank, Nat'l Assoc. v. OCMC, Inc.*, No. 06-CV-755 (S.D. Ind. filed May 11, 2006); *PNC Bank, Nat'l Assoc. v. Hall*, No. 06-CV-992 (S.D. Ind. filed July 31, 2007); *PNC Bank, Nat'l Assoc. v. Pence*, No. 08-CV-502 (S.D. Ind. filed Apr. 18, 2008).

the billing rights to the Adult Chat traffic. *Id.* Under the proposed deal, Navicomm's name would appear on phone bills whenever the customer called certain Adult Chat services, and Navicomm would work with clearinghouses to collect payment for the calls. *Id.* at 6–7. The telephone provider and the clearinghouse would each take a cut of the profits from these billings, and the remaining profits would go to the owner of the billing rights. *Id.* at 7. Following negotiations, OCMC and Navicomm agreed that Navicomm would purchase the billing rights to the Adult Chat traffic. *Id.* at 5–6. OCMC would continue providing a number of services on the Adult Chat traffic, including customer service, accounting, contract administration, and commission reporting. *Id.* at 7.

To handle the new business from the Adult Chat traffic, Hall incorporated Navicomm, ICOE, and RFE. *Id.* at 8–9. Incorporation was necessary to comply with FCC regulations. *Id.* at 9. Navicomm was meant to be the main carrier, and ICOE and RFE were incorporated in case traffic had to be pulled from Navicomm immediately. *Id.* Hall engaged a sales force to "bird-dog" business for Navicomm and would pay the sales force on a finder's fee basis. *Id.* Hall negotiated contracts on the Adult Chat business with legal advice from Ann Bernard ("Bernard"), OCMC's in-house legal counsel. *Id.* at 10–11.

However, the nature of the Adult Chat business led to end customers lodging many complaints to avoid paying for the calls. *Id.* at 12. End-user phone companies, such as AT&T, got so many complaints that they informed the clearinghouses that they were cancelling their contracts with Navicomm. *Id.* In addition, the phone companies declined to do business with any company incorporated by Hall. *Id.* "[T]he demise of Navicomm" came in 2006. *Id.*

In Fall 2005, Treash approached Hall with another business opportunity, the so-

3

called "Fat Finger" traffic.[4] *Id.* at 14. This traffic involved billing for misdialed calls; when a customer meant to dial "1-800-CALL-ATT" and instead dialed "1-800-CALL-ATP," the call would be routed and billed through OCMC. *Id.* Hall discussed the possibility of one of his companies taking over the Fat Finger traffic with Joseph Pence ("Pence"), OCMC's President and CEO. *Id.* at 14–15. Pence recommended that Hall retain a third company to factor the transactions, and Hall subsequently retained Thermo Credit, LLC ("Thermo Credit") to factor the Fat Finger traffic. *Id.* at 16. Thermo Credit performed due diligence on the Fat Finger traffic, and Hall agreed that ICOE would purchase the Fat Finger traffic from OCMC. *Id.* at 17.

### B. OCMC'S ENTRY INTO RECEIVERSHIP

Throughout the time that OCMC was entering into the Adult Chat and Fat Finger transactions with the Hall Entities, OCMC was involved in a loan relationship with PNC Bank, National Association ("PNC Bank"). *See* Dkt. No. 73, *PNC Bank, Nat'l Assoc. v. OCMC, Inc.*, No. 06-CV-755 (S.D. Ind. filed May 11, 2006) (the "Receivership Appointment Case"). OCMC borrowed funds from PNC Bank to cover its daily operations costs, and these loans were secured by a lien on OCMC's accounts receivable. *Id.* at Dkt. No. 1.

In May 2006, OCMC could no longer make the required payments on the loans. *Id.* at Dkt. No. 73. PNC Bank petitioned this Court to appoint a Receiver for OCMC. *Id.* at Dkt. No. 9. On May 12, 2006, Meridian was appointed Receiver and given all the power's of

---

[4] The history of ICOE and the Fat Finger traffic has been discussed extensively in an order in related litigation, so a brief synopsis will suffice here. *See* Order on Defendant Scott Hall's Motion to Dismiss and, Alternatively, Motion for Summary Judgment (Dkt. No. 189); *PNC Bank, Nat'l Assoc. v. Hall*, No. 07-CV-992 (S.D. Ind. Oct. 6, 2010).

4

OCMC's Board of Directors. *See id.* at Dkt. No. 73 (Amended Order Appointing Receiver). Meridian was charged with liquidating OCMC's assets for the benefit of OCMC's creditors, PNC Bank and CID Mezzanine Capital, Ltd. *Id.*

Under its authority as Receiver, Meridian filed suit in this Court against a number of OCMC's former employees, officers, and business partners. Dkt. No. 117. Among those targeted in the suit were Pence, Treash, Bernard, former OCMC Vice President Brad Benge ("Benge"), former salesmen Dan Rohn ("Rohn") and Graham Cohen ("Cohen"), former head of IT Spencer Zimmerman ("Zimmerman"), Hall, and various entities controlled by those individuals (collectively, "Defendants").[5] *Id.* Meridian alleges that Defendants misappropriated and mishandled OCMC's funds to the detriment of OCMC's financial stability and its obligations to creditors. *See generally id.*

As to Hall and the Hall Entities specifically, Meridian alleges that the transfers of the Adult Chat and Fat Finger businesses amount to conversion of OCMC's property and tortious interference with existing business relationships and contracts. Dkt. No. 117. Hall counters that the transfers were legitimate arms-length transactions. Dkt. No. 415. Additionally, the parties disagree as to whether the Court should pierce the corporate veil to hold Hall personally liable for the alleged misconduct of the Hall Entities. *Compare* Dkt. No. 415, *with* Dkt. No. 430.

The Court adds additional facts below as necessary.

## II. STANDARD

---

[5] Throughout the litigation, Meridian reached settlements with a number of Defendants, including Bernard, Benge, Zimmerman, Treash, Rohn, and Cohen. *See* Dkt. Nos. 204, 429, 436, 462–64. Only the claims against Pence, Hall, and their related entities remain pending.

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable

inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

#### A. FAILURE TO COMPLY WITH LOCAL RULE 56.1

At the outset, the Court notes Plaintiff's argument that Defendant's Motion for Summary Judgment fails to comply with Local Rule 56.1. *See* Dkt. No. 430 at 4. In his supporting brief, Hall did not present a list of material facts not in dispute. *See* Dkt. No. 415. Local Rules require that briefs accompanying motions for summary judgment include "a section . . . containing the facts potentially determinative of the motion as to which the moving party contends there is no genuine issue." S.D. Ind. L.R. 56.1. Failure to comply

7

with this requirement may lead to the court deeming admitted the opposing party's statements of fact. *Little v. Cox's Supermarkets*, 71 F.3d 637, 640 (7th Cir. 1995).

However, the purpose of Local Rule 56.1 is "to let the court and the opposing party know what legal and factual issues are on the table." *Harmon v. OKI Sys.*, 115 F.3d 477, 481 (7th Cir. 1997). A court may excuse noncompliance in the interest of justice. S.D. Ind. L.R. 56.1(i). Hall is *pro se* in this matter, and *pro se* submissions are to be construed liberally. *See Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006). The Court concludes that Hall's Motion for Summary Judgment adequately apprises Meridian and the Court of the issues on the table.[6] Therefore, the Court proceeds to address those issues.

### B. PIERCING THE CORPORATE VEIL

When a person and an organization are alleged to be, in effect, the same, a court must determine whether the individual should be held liable for the organization's activities by piercing the corporate veil. *See Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). To determine whether the corporate veil should be pierced, a court must look to the law of the state of the company's organization. *See RSR Corp. v. Avanti Devel. Inc.*, No. IP 95-1359, 2000 WL 1448705, *12 n.10 (S.D. Ind. Mar. 31, 2000) (McKinney, J.) (piercing the corporate veil "presumptively governed by the law of the state of incorporation"). In this case, the law of Nevada presumptively governs, as Nevada is the state of incorporation of the Hall Entities. *See id.*; *see also* Dkt. No. 416 at 9.

---

[6] The Court observes that Meridian's Response to Hall's Motion for Summary Judgment also fails to comply with Local Rule 56.1 in that it does not include any separate statement of facts whatsoever. *See* S.D. Ind. L.R. 56.1(b); *see also* Dkt. No. 430. The Court excuses Meridian's failure to comply as well. Therefore, the Court will be deem statements of fact admitted only to the extent the opposing party has not presented contradictory evidence. *See Little*, 71 F.3d at 640.

## 1. NOTICE

Hall contends that Meridian's Complaint does not give him proper notice of Meridian's intent to use the doctrine of piercing the corporate veil to hold him personally liable for the alleged misconduct of the Hall Entities. Dkt. No. 415 at 2–3.[7] Claims arising from piercing the corporate veil are subject to the notice pleading standards of Federal Rule of Civil Procedure 8(a). *Fifty-Six Hope Rd. Music, Ltd. v. Mayah Collections, Inc.*, No. 05-CV-1059, 2006 WL 1687451, *2 (D. Nev. June 16, 2006). A complaint seeking to impose individual liability through piercing the corporate veil without specifically alleging the elements of the alter ego doctrine is not required to be dismissed for lack of notice. *Id.* However, in *Fifty-Six Hope Road*, the court concluded that pleadings alleging that an individual defendant "is doing business as . . . and is an officer, director, shareholder, employee, distributor, agent and servant" of a particular corporation were insufficient to provide notice of plaintiff's intent to rely on a piercing the corporate veil theory. *Id.*

Meridian's Third Amended Complaint makes more concrete allegations than those of the plaintiff in the *Fifty-Six Hope Road* case. In addition to pleading Hall's connection to each of the Hall Entities, Meridian includes specific allegations that Hall used the Hall Entities to direct substantial funds to himself. *See* Dkt. No. 117 ¶¶ 17, 49, 52. In addition, Meridian alleges that Hall caused funds to be transferred to OCMC officers and employees through his entities. *See id.* The Court concludes that Meridian has provided adequate

---

[7] The Court notes that, despite Hall's implied argument to the contrary, failure to plead facts for piercing the corporate veil does not preclude Plaintiff from bringing claims against him based on his personal conduct. *See DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.*, 384 F.3d 338, 346 (7th Cir. 2004) (allowing corporate officer to be held individually liable for a tort when he "personally participates" in it).

9

notice to Hall of its intent to pierce the corporate veil and hold Hall personally liable for the alleged misconduct of the Hall Entities.

## 2. PIERCING THE CORPORATE VEIL OF THE HALL ENTITIES

Hall contends that Meridian has not presented enough facts suggesting that Hall is the alter ego of the Hall Entities such that he may be held personally liable for any of the Hall Entities' alleged misconduct. Dkt. No. 415 at 1. Looking to Nevada law, "although corporations are generally to be treated as separate legal entities, the equitable remedy of piercing the corporate veil may be available . . . in circumstances where it appears that the corporation is acting as the alter ego of a controlling individual." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 845 (Nev. 2000). The alter ego test is a fact-sensitive inquiry that depends on the circumstances of each case. *Id.* Whether the alter ego test is met must be determined by the court as a matter of law. NEV. REV. STAT. § 78.747(3) (2010).

An officer acts as the alter ego of a corporation when "(1) [t]he corporation is influenced and governed by the . . . officer; (2) [t]here is such unity of interest and ownership that the corporation and the . . . officer are inseparable from each other; and (3) [a]dherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice." NEV. REV. STAT. § 78.747(2) (2010). Factors that may indicate unity of interest and ownership include commingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities. *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987). "[M]erely influencing and governing a corporation does not necessarily demonstrate the unity of interest and ownership resulting in the requisite inseparability of a corporation

and shareholder." *Wyatt v. Bowers*, 747 P.2d 881, 883 (Nev. 1987). In evaluating all of these issues, "the corporate cloak is not lightly thrown aside." *Baer v. Amos J. Walker, Inc.*, 452 P.2d 916, 916 (Nev. 1969).

Meridian contends that its designated evidence demonstrates that piercing the corporate veil is appropriate.[8] Dkt. No. 430 at 10–13. Meridian has designated evidence showing that Hall would pay Navicomm and ICOE expenses out of funds held by other Hall Entities. Dkt. No. 431-4 at 2. In addition, Hall indicated that he often would move money between the Hall entities. *Id.* Meridian also has designated evidence showing that Hall did not keep corporate records apart from bank statements. *Id.* at 5. Meridian's designated evidence also suggests that Hall would write himself checks from the accounts of the Hall Entities to pay his salary whenever he felt it was appropriate. *Id.* at 4. The above evidence shows that Hall influenced and governed the Hall Entities and disregard of corporate formalities. *See generally* Dkt. No. 416. However, the designated evidence, even taken in the light most favorable to Meridian, does not demonstrate commingling of funds between Hall's individual funds and the funds of the Hall Entities, nor does it show the Hall Entities to be undercapitalized. In short, Meridian seeks to pierce the corporate veil of the Hall Entities based on a failure to keep detailed corporate records, influence and governance by Hall, and nothing more. Piercing the corporate veil is the exception rather than the rule, *see Baer*, 452 P.2d at 916, and the Court concludes that Meridian's designated evidence does not demonstrate that piercing is appropriate. Hall may be held

---

[8] The Court observes that many of the citations to evidence provided in Meridian's response do not correspond to evidence presented in Meridian's exhibits. *Compare* Dkt. No. 430, *with* Dkt. No. 431. The Court only considers the evidence actually included in Meridian's exhibits. *See* S.D. Ind. L.R. 56.1(b) (statements of material facts in dispute "must be supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence either *already in the record or contained in an appendix to the brief*.") (emphasis added).

liable only for injuries he caused individually, not for injuries caused by the Hall Entities. *Cf. Caregivers Great Lakes*, 384 F.3d at 346 (allowing corporate officer to be held individually liable for a tort when he "personally participates" in it).

### C. ALLEGATIONS IN MERIDIAN'S COMPLAINT

At the outset, the Court notes that Meridian has made little, if any, effort to contradict the factual assertions made by Hall in his Motion for Summary Judgment and supporting documents. *See generally* Dkt. No. 431. Meridian contends that Hall's failure to comply with Local Rule 56.1 and include a specific statement of material facts relieves Meridian of the obligation to file a comparable statement in its response. Dkt. No. 430 at 8, 10. Additionally, Meridian designates little, if any, supporting evidence for its substantive legal claims. *See generally* Dkt. No. 431. As stated previously, the Court has concluded that, at this time, failure to comply with Local Rule 56.1 will be excused as to both parties. However, the "district court need not scour the record to make the case of a party who does nothing." *Herman v. City of Chi.*, 870 F.2d 400, 404 (7th Cir. 1989). The Court will proceed to address the challenges to the substantive claims raised by Hall's Motion for Summary Judgment using the evidence Hall and Meridian have provided up to this point.

#### 1. CONVERSION

Meridian alleges that Hall and the Hall Entities converted OCMC's assets. Dkt. No. 117 ¶¶ 93–97. The elements necessary to establish a civil cause of action for conversion are similar to those in the criminal conversion statute and, like all civil claims, must be proven by a preponderance of the evidence. *McKeighen v. Daviess Cnty. Fair Bd.*, 918

12

N.E.2d 717, 723 (Ind. Ct. App. 2009). To prove conversion, a plaintiff must demonstrate that the defendant "exert[ed] unauthorized control over property of another[.]" IND. CODE § 35-43-4-3 (2010). Unlike with criminal conversion, mens rea is not an element of tortious conversion. *Nat'l Assoc. of Sys. Adm'rs, Inc. v. Avionics Solutions, Inc.*, No. 06-CV-159, 2008 WL 140773, *14 (S.D. Ind. Jan. 20, 2008) (Barker, J.).

First, the Court must address how failure to pierce the corporate veil effects Plaintiff's claim of conversion against Hall. A corporate officer is not liable for conversion committed by the corporation merely by virtue of holding an office. *See, e.g.*, *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986) (applying general tort principles of liability of corporate officers to conversion claim). However, officers may be held liable for conversion to the extent their actions result in a conversion by the corporation, even if they receive no personal benefit. *See, e.g.*, *Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 479 (5th Cir. 2002) (following the general principle that corporate officers are liable for torts they commit individually). Designated evidence suggests that Hall himself was involved directly in negotiating transfers of the Adult Chat and Fat Finger businesses. *See* Dkt. No. 416 at 5–22. Accordingly, the record contains sufficient evidence to create a genuine issue of material fact as to whether Hall's activities in connection with the Adult Chat and Fat Finger transfers subject him to liability for conversion, notwithstanding the corporate veil.

Hall does not dispute that the Hall Entities obtained the Adult Chat and Fat Finger business from OCMC. *See generally id.* The question then becomes whether the transfer was unauthorized. For control over property to be unauthorized, it must be exerted "without the other person's consent; . . . by transferring or encumbering other property while failing

13

to disclose a lien, adverse claim, or other legal impediment to the enjoyment of that other property; . . . [or] by expressing an intention to damage the property or impair the rights of any other person[.]" IND. CODE §§ 35-43-4-1(b)(1), (b)(3), (b)(7) (2010). In this case, Hall has brought forth evidence establishing that OCMC representatives consented to the transfer of the Adult Chat and Fat Finger businesses to the Hall Entities. Dkt. No. 416 at 5, 14–16. Meridian has not designated evidence suggesting either the OCMC representatives were not authorized to make the transfers or that the Hall Entities engaged in the transfers to impair the rights of OCMC or any other third party. *Cf.* Dkt. No. 431-3 at 3 (establishing that even OCMC insiders had little understanding of third party rights in the Adult chat and Fat Finger businesses). Although the evidence is to be viewed in the light most favorable to the nonmoving party, the Court cannot create fact issues where none exist. *See Bombard*, 92 F.3d at 562. Because Meridian has not created a genuine issue of material fact as to an essential element of its claim, the Court must conclude that Hall is entitled to summary judgment on Meridian's conversion claim.

## 2. INDIANA CRIME VICTIM'S RELIEF ACT

Meridian asserts that, on behalf of OCMC, it is entitled to treble damages under the Indiana Crime Victim's Relief Act ("ICVRA"). Dkt. No. 117 ¶¶ 98–117. Specifically, Meridian alleges four predicate violations as the bases of ICVRA liability—criminal conversion, theft, criminal mischief, and deception. *Id.* ICVRA provides relief to persons who suffer a pecuniary loss based on violation of the provisions of Indiana Code Section 35-43. IND. CODE § 34-24-3-1 (2010). *See also* Ind. Code §§ 35-43-4-3 (conversion), -4-2 (theft), -1-2 (criminal mischief), -5-3 (deception). A criminal conviction for the underlying

misconduct is not necessary to maintain an action for associated ICVRA civil penalties. *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 851 (S.D. Ind. 2005) (Tinder, J.). An ICVRA plaintiff must prove violation of relevant criminal prohibitions by a preponderance of the evidence. *Id.*

Meridian first asserts that IVCRA liability is appropriate because Hall and the Hall Entities engaged in criminal conversion of OCMC's assets. Dkt. No. 117 ¶¶ 98–101. As discussed above, Meridian has not created a genuine issue of material fact as to Hall's liability for tortious conversion. Criminal conversion requires proof of all of the elements of tortious conversion, as well as evidence of a knowing or intentional mental state. IND. CODE § 35-43-4-3 (2010). Because Meridian has not created a genuine issue of material fact as to tortious conversion, it is unnecessary for the Court to examine whether there is a genuine issue of material fact as to Hall's mental state. Accordingly, Hall is entitled to summary judgment on Meridian's conversion-based ICVRA claim.

Next, Meridian contends that ICVRA liability based on theft is appropriate. Dkt. No. 117 ¶¶ 103–06. To prove theft, a plaintiff must show that the defendant "knowingly or intentionally exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use[.]" IND. CODE § 35-43-4-2(a) (2010). Criminal conversion is a lesser-included offense of theft. *See Shouse v. State*, 849 N.E.2d 650, 657 (Ind. Ct. App. 2006). Therefore, as Meridian has failed to create a genuine issue of material fact as to conversion, the Court concludes that Meridian's theft-based ICVRA suffers the same fate. Hall is entitled to summary judgment on Meridian's theft-based ICVRA claim as well.

In addition, Meridian seeks the imposition of ICVRA liability based on deception.

Dkt. No. 117 ¶¶ 114–17.  To prove deception, a plaintiff must show that the defendant "knowingly or intentionally ma[de] a false or misleading written statement with intent to obtain property[.]"  IND. CODE § 35-43-5-3(a)(2) (2010).  Meridian has not designated any evidence that a false or misleading written statement was made to OCMC.  Indeed, the evidence before the Court shows that the transfers of the Adult Chat and Fat Finger businesses to the Hall Entities were negotiated largely by phone calls and handshakes rather than by written documents.  *See, e.g.*, Dkt. No. 416 at 5, 12, 16.  Without a false or misleading written statement, no deception liability can arise.  *See* IND. CODE § 35-43-5-3(a)(2) (2010).  Consequently, based on the evidence currently before the Court, the Court concludes that Meridian has not created a genuine issue of material fact as to deception, and, therefore, Hall is entitled to summary judgment on Meridian's deception-based ICVRA claim.

Lastly, Meridian bases its claim for ICVRA liability on criminal mischief.  Dkt. No. 117 ¶¶ 108–12.  To prove criminal mischief, a plaintiff must show that the defendant "knowingly or intentionally cause[d] another to suffer pecuniary loss by deception or by an expression of intention . . . to impair the rights of another person[.]"  IND. CODE § 35-43-1-2 (2010).  As discussed above, Meridian has not created a genuine issue of material fact as to deception, so for any ICVRA liability to attach based on criminal mischief, Meridian must show that Hall "express[ed] an intention . . . to impair the rights of another person[.]"  *Id.*  Once again, Meridian's designated evidence fails to create a genuine issue of material fact on this issue.  The evidence before the Court establishes that Hall was not aware of any other persons who had rights in either the Adult Chat or Fat Finger businesses at the time those businesses were transferred to the Hall Entities.  Dkt. No. 416 at 13, 18.  Without evidence

that Hall was aware of another party's rights in either the Adult Chat or Fat Finger businesses, there is no issue of fact as to Hall's intent. Accordingly, Hall is entitled to summary judgment on Meridian's criminal mischief-based ICVRA claim.

In short, Meridian has not raised a genuine issue of material fact as to any of its alleged bases for ICVRA liability—criminal conversion, theft, deception, or criminal mischief. Accordingly, Hall is entitled to summary judgment on all of Meridian's ICVRA claims.

### IV. CONCLUSION

For the foregoing reasons, Hall's Motion for Summary Judgment (Dkt. No. 415) is **GRANTED**. The Court declines to pierce the corporate veil and hold Hall personally liable for the Hall Entities' conduct. In addition, summary judgment is **GRANTED** in Hall's favor on Meridian's conversion claim and related claims for liability under the Indiana Crime Victim's Relief Act.

IT IS SO ORDERED this 7th day of October 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached

Distribution to:

George William Bills Jr.
LAW OFFICE OF G. WILLIAM BILLS, JR.
gwilliambills@yahoo.com

Kathleen A. Gallagher
ECKERT SEAMANS CHERIN & MELLOTT LLC
kgallagher@eckertseamans.com

Sandy B. Garfinkel
ECKERT SEAMANS CHERIN & MELLOTT, LLC
sgarfinkel@eckertseamans.com

Gregg Heinemann Jr.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
gheinemann@eckertseamans.com

Max W. Hittle Jr.
KRIEG DEVAULT, LLP
mhittle@kdlegal.com

Carol Nemeth Joven
PRICE WAICUKAUSKI & RILEY
cnemeth@price-law.com

Thomas Livingston
OFFICE OF THE FEDERAL PUBLIC DEFENDER
thomas_livingston@fd.org

C. Kent May
ECKERT SEAMANS CHERIN & MELLOTT, LLC
kmay@eckertseamans.com

Craig Morris McKee
WILKINSON GOELLER MODESITT WILKINSON & DRUMMY
cmmckee@wilkinsonlaw.com

Stephen S. Stallings
STALLINGS LLC
sstallings@stallings-law.com

Jana K. Strain
GEIGER CONRAD & HEAD, LLP
jana.strain@gch-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com

Ann Marie Waldron
awaldron@rwylaw.com

John H. Williams Jr.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
jwilliams@eckertseamans.com

SCOTT HALL
308 Blue Quail Ct.
Bedford, TX 76021