UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MERIDIAN FINANCIAL ADVISORS, | ) | |
| LTD. D/B/A THE MERIDIAN GROUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. 1:07-cv-00995-LJM-TAB |
| | ) | |
| JOSEPH A. PENCE, | ) | |
| SCOTT HALL, | ) | |
| NAVICOMM LLC, | ) | |
| NAVICOMM, LTD, | ) | |
| ICOE LTD, | ) | |
| T3A LLC, | ) | |
| RFE LLC, | ) | |
| THE PERISOS GROUP LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANT JOSEPH A. PENCE'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendant's, Joseph A. Pence ("Pence"), Motion for

Summary Judgment (Dkt. No. 425). Pence asks this Court to grant summary judgment in

his favor as to the allegations raised by Plaintiff's, Meridian Financial Advisors, Ltd. d/b/a

the Meridian Group ("Meridian"), Third Amended Complaint (Dkt. No. 117). The Court has

reviewed the parties' submissions, and, for the following reasons, Pence's Motion for

Summary Judgment (Dkt. No. 425) is **GRANTED in part** and **DENIED in part**.

# I.  BACKGROUND

This case is one of a number of related cases[1] arising from the collapse of OCMC, Inc. ("OCMC"),[2] a Carmel, Indiana based company specializing in the processing of telecommunications services.  Dkt. No. 144 ¶¶ 29–30.  OCMC was involved with a number of services within the telecommunications industry, including those at issue in this case, the "Adult Chat Business"[3] and the "Fat Finger Business."[4]  During the time period material to this case, Pence served as President and CEO of OCMC and was a member of OCMC's Board of Directors ("Board").  *Id.* at ¶ 2.  Together with Brad Benge ("Benge"),[5] OCMC's Vice-President and Assistant Secretary, and Ann Bernard ("Bernard"),[6] OCMC's Secretary and General Counsel, Pence oversaw the daily operations of OCMC, including its various business relationships.  *Id.* at ¶¶ 3–4, 31, 33.  To maintain its customer relationships and

---

[1]  *See PNC Bank, Nat'l Assoc. v. Pence*, No. 08-CV-502 (S.D. Ind. filed Apr. 18, 2008); *PNC Bank, Nat'l Assoc. v. ICOE, Ltd.*, No. 07-CV-992 (S.D. Ind. filed July 31, 2007); *PNC Bank, Nat'l Assoc. v. OCMC, Inc.*, No. 06-CV-755 (S.D. Ind. filed May 11, 2006); *Blue Frog Mobile NV Inc. v. Navicomm LLC*, No. 06-CV-1215 (S.D. Ind. filed Aug. 10, 2006).

[2]  For ease of discussion, the term "OCMC" as used in this Order refers to all current and former incarnations of OCMC, Inc., including One Call Communications.

[3]  As used in this Order, "Adult Chat Business" refers to the services characterized by the parties and their witnesses as "Adult Chat" or "Adult Content."  This term is defined by the type of content rather than by customer, as it is undisputed that some OCMC customers were bifurcated into Adult Chat and non-Adult Chat services, with the non-Adult Chat services remaining as OCMC accounts.  *See* Dkt. No. 424-12 at 35–37.

[4]  As used in this Order, "Fat Finger Business" refers to traffic where customers own toll-free numbers "one digit off" from well-known services such as 1-800-COLLECT (i.e., 1-800-COOLECT).  *See* Dkt. No. 424-12 at 36.  This traffic is alternatively referred to as "misdial" traffic.  *Id.*

[5]  Benge was initially named as a defendant in this action, but he has settled with Meridian and all claims against him have been dismissed.  Dkt. Nos. 428–29.

[6]  Bernard was originally named as a defendant in this action but has subsequently been dismissed.  Dkt. Nos. 203–04.  The circumstances surrounding Bernard's cooperation with Meridian have been detailed in a previous Order of this Court.  *See* Dkt. No. 470 ("Sanctions Order") at 7–12, 19–22.

promote its products and services, OCMC employed a number of sales personnel, including Robert Treash ("Treash"), Graham Cohen ("Cohen"), and Dan Rohn ("Rohn") (collectively, the "Employee Defendants").[7] Dkt. No. 424-14 at 101–03. Throughout the relevant period, OCMC funded its day-to-day operations through a line of credit provided by PNC Bank, National Association ("PNC Bank"), secured on OCMC's accounts receivable. *See, e.g.*, Dkt. No. 424-5 at 19.

The other remaining individual defendant in this case, Martin Scott Hall ("Hall"), is a former OCMC employee. Dkt. No. 447-2 at 7–8. In 1999, Hall left OCMC and, following some time with another telecommunications company, went into business for himself. *Id.* Hall is the principal of a number of limited liability companies at issue in this case, including Navicomm, LLC and Navicomm, Ltd. (collectively "Navicomm"); ICOE, Ltd. ("ICOE"); RFE, LLC; T3A LLC; and the Perisos Group, LLC (collectively, the "Hall Entities"). *Id.* at 8. Following the collapse of OCMC, the Employee Defendants went to work for Hall at ICOE. *See* Dkt. No. 424-12 at 100; Dkt. No. 447-3 at 1.

In late 2003, OCMC personnel entered negotiations with Hall to have one of his companies purchase OCMC's Adult Chat Business. *See generally* Dkt. No. 447-4 at 1–3. As a result of these negotiations, Hall set up Navicomm. Dkt. No. 447-3 at 10. It was agreed that Navicomm would purchase the billing rights to the Adult Chat Business from OCMC, but OCMC would continue to provide accounting, information technology, and other support services. *See* Dkt. No. 144 ¶ 48. When the Adult Chat Business appeared on an

---

[7] Treash, Cohen, and Rohn were originally named as defendants in this action, along with various LLCs associated with them. Meridian subsequently settled with Treash, Cohen, and Rohn and dismissed all claims against them and their related companies. *See* Dkt. Nos. 450–52, 462–64.

end customer's telephone bill, Navicomm would be listed as the billing party. *See id.* at ¶ 46; Dkt. No. 447-4 at 5. According to Pence and other witnesses in this action, the Board had expressed concern with having OCMC's name associated with the Adult Chat Business. *See, e.g.*, Dkt. No. 447-4 at 2–3; Dkt. No. 424-10 at 3–4. However, no formal Board resolution was passed directing Pence or any other OCMC employee to divest OCMC of the Adult Chat Business. Dkt. No. 447-1 ¶ 4.

In late 2005, OCMC approached Hall about the possibility of purchasing the billing rights to some of OCMC's Fat Finger Business. Dkt. No. 447-7 at 6–7. Following Pence's advice, Hall engaged Thermo Credit, LLC to factor the Fat Finger Business and determine the value of the transfer. *See* Dkt. No. 144 ¶ 56. Hall then agreed that ICOE would purchase the billing rights to the Fat Finger Business for approximately $425,000. Dkt. No. 447-7 at 5, 7. There was no formal Board resolution authorizing the transfer of the Fat Finger Business. Dkt. No. 447-1 ¶ 5. At some point prior to being transferred to the Hall Entities, both the Adult Chat and Fat Finger Businesses had been listed as accounts receivable in documents submitted to PNC Bank. *See* Dkt. No. 424-3 at 189–90, 290–92.

In October 2005, Pence, Benge, and Bernard (the "Officers") formed BT&M Investments, LLC ("BT&M"),[8] with themselves as the sole members and managers. Dkt. No. 114 ¶ 43; Dkt. No. 458-2 at 5–6. The parties disagree about the nature and purpose of BT&M. Pence contends that BT&M was formed as an investment company for the Officers to meet the capital call from PNC Bank.[9] Dkt. No. 458-2 at 5–6. Pence admits

---

[8] BT&M was originally named as a defendant in this action, but Meridian's claims against it were dismissed pursuant to Meridian's settlement with Benge. *See* Dkt. Nos. 492–93.

[9] PNC Bank had requested that the Officers (along with CFO Lester Li) make additional capital contributions to OCMC. *See* Dkt. No. 447-16 at 101.

that the Officers later performed "consulting work" as BT&M for Hall and the Hall Entities. *Id.* at 5. However, Pence contends that any work performed by BT&M for Hall was outside the scope of OCMC's business and instead relied on general knowledge about the telecommunications industry possessed by the Officers. Dkt. No. 426-2 at 8–9, 14, 17–19. Meridian, on the other hand, asserts that BT&M was formed "to receive payments from [the Hall Entities] to further disguise the nature of the transactions between [the Hall Entities] and OCMC employees." Dkt. No. 440 at 4. BT&M paid the capital call on the Officers' behalf after receiving a loan from one of the Hall Entities. Dkt. No. 447-17 at 116.

In early 2006, PNC Bank became concerned about the financial status of OCMC. OCMC's Chief Financial Officer, Lester Li ("Li"), along with other members of OCMC's accounting department, had raised concerns about the propriety of the Adult Chat and Fat Finger Transfers. Dkt. No. 424-2 at 209–11. In particular, Li expressed concerns that the Officers and the Employee Defendants may have had some sort of ownership or management relationship with the Hall Entities. *Id.* at 198–200; *see also* Dkt. No. 424-3 at 234–42. Soon after bringing his concerns to the Board, Li was terminated and replaced as CFO by Jeff Good of Milestone Advisors. *See* Dkt. No. 424-1 at 24; Dkt. No. 424-11 at 5–6.

OCMC's financial situation continued to deteriorate. On May 11, 2006, PNC Bank filed suit in this Court seeking the appointment of a Receiver for OCMC. *See* Dkt. No. 9, *PNC Bank, Nat'l Assoc. v. OCMC, Inc.*, No. 06-CV-755 (S.D. Ind. May 11, 2006). Following a hearing, the Court granted PNC Bank's request and appointed Meridian as Receiver for OCMC. *See* Dkt. No. 15, *PNC Bank, Nat'l Assoc. v. OCMC, Inc.*, No. 06-CV-755 (S.D. Ind. May 12, 2006). As the court-appointed Receiver, Meridian was given all the powers of

OCMC's Board, including the power to initiate litigation on OCMC's behalf. *Id.*

PNC Bank sent Margaret Good ("Ms. Good")[10] from Meridian to OCMC to investigate the situation. Dkt. No. 424-1 at 207–09. Ms. Good arrived at OCMC just before Meridian was appointed as Receiver. *Id.* Under Ms. Good's direction, numerous pieces of computer equipment[11] were taken by Meridian's Michael Von Lehman ("Von Lehman") from OCMC's premises to PNC Bank's office in Pittsburgh, Pennsylvania for inspection. Dkt. No. 424-8 at 10. Meridian contends that a number of employees, including Pence, deleted emails and other computer documents detailing improper conduct just before leaving OCMC's premises. *See, e.g.*, Dkt. 424-1 at 161–66. Apart from those employees later engaged as consultants by Meridian, OCMC's employees were all terminated. *See* Dkt. No. 15, *PNC Bank, Nat'l Assoc. v. OCMC, Inc.*, No. 06-CV-755 (S.D. Ind. May 12, 2006) (requiring the termination of all OCMC employees).

On July 31, 2007, pursuant to its powers as Receiver, Meridian filed suit in this Court against numerous parties for their conduct in connection with the collapse of OCMC. Dkt. Nos. 1, 117. This suit was consolidated for discovery only with PNC Bank's case[12] against Pence pursuant to an Order of this Court. *See* Dkt. No. 343. Following extensive discovery and a number of various motions, some defendants settled, leaving only Pence, Hall, and

---

[10] Margaret Good is not related to Jeff Good. Dkt. No. 424-11 at 58.

[11] An exact inventory of the computer equipment taken has not been produced in connection with summary judgment. However, the parties appear to agree that the transported computer equipment included OCMC's email server and hard drives of desktop computers used by Pence, Benge, Bernard, the Employee Defendants, and members of OCMC's information technology and accounting departments. Dkt. No. 424-8 at 10–12.

[12] *PNC Bank, Nat'l Assoc. v. Pence*, No. 08-CV-502 (S.D. Ind. filed Apr. 18, 2008).

the Hall Entities[13] as the remaining defendants.  On April 5, 2010, Pence filed the current

Motion for Summary Judgment, requesting that the Court grant judgment in his favor on all

of Meridian's claims against him.  Dkt. No. 425.

The Court adds additional facts below as necessary.

## II.  STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural

shortcut, but rather is an integral part of the federal rules as a whole, which are designed

to secure the just, speedy, and inexpensive determination of every action.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  *See also United Ass'n of Black Landscapers*

*v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990).  Motions for summary

judgment are governed by Federal Rule of Civil Procedure 56(c), which provides in relevant

part:

> The judgment sought should be rendered if the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is no genuine
> issue as to any material fact and that the movant is entitled to judgment as
> a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing

party may not simply rest upon the pleadings but must instead submit evidentiary materials

which "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ.

P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence

---

[13] On October 7, 2010, the Court issued an Order declining to pierce the corporate veil and granting summary judgment in favor of Hall on Meridian's claims of conversion and related liability under the Indiana Crime Victim's Relief Act; however, all other claims are still pending against Hall and the Hall Entities.  *See generally* Dkt. No. 485.  The present Order does not address any of the remaining claims against either Hall or the Hall Entities.

favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III. DISCUSSION

## A. EVIDENTIARY ISSUES

At the outset, the Court notes the plethora of filings by all parties in this litigation. Over 4,000 pages of discovery has been filed in connection with this Motion for Summary Judgment. *See* Dkt. Nos. 424, 426, 447, 458. The focus of the discussion in the briefs of the parties failed to make relevant the bulk of the filed materials. The Court is entitled to rely upon the parties to present clearly their cases for summary judgment and will not "scour the record" on behalf of either parties' position. *See Bombard*, 92 F.3d at 562; *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs."). The court is also entitled to specific citations to the materials which support the assertions of the brief. *See* S.D. IND. L. R. 56.1. While this did occur on many occasions, general citations abounded. The Court will take note of the assertions in the parties' briefs to the extent that they actually correspond to designated evidence, but the Court declines the parties' implied invitation to distill the factual issues absent specific, rather than general, designations. *Accord. id.*

Additionally, Pence contends that Meridian's designations include inadmissible evidence.[14] Dkt. No. 469 at 12–13. Inadmissible evidence will not be considered by a court in evaluating a Motion for Summary Judgment. *See Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003) (allowing a court to disregard "non-conforming submission" in

---

[14] Pence also argues that certain submitted evidence was obtained from Bernard and Ray in a manner that has previously subjected Meridian to sanctions in this action and, as such, Meridian should not be permitted to rely on such evidence. Dkt. No. 469 at 5–12. However, Pence has not shown that the use of any of Meridian's designated evidence is precluded by the Sanctions Order, which did not preclude Meridian from using evidence obtained by either Bernard or Ray. *See generally* Dkt. No. 470. Therefore, to the extent evidence obtained from Bernard and Ray is not otherwise inadmissible, the Court will consider that evidence in evaluating Pence's Motion for Summary Judgment.

evaluating summary judgment). Specifically, statements by individuals who lack personal knowledge and documents that lack relevance to the issues before the court will be disregarded. *See Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 614–16 (7th Cir. 2002) (disregarding irrelevant evidence); *Hogue v. City of Ft. Wayne*, 599 F. Supp. 2d 1009, 1016 (N.D. Ind. 2009) (disregarding statements made without personal knowledge). To the extent that designated evidence by either party is inadmissible in this case, the Court disregards that evidence in evaluating the Motion for Summary Judgment.

## B. ALLEGATIONS IN MERIDIAN'S COMPLAINT

### 1. BREACH OF FIDUCIARY DUTIES

Meridian contends that Pence violated his fiduciary duties both as an officer and as a director of OCMC. Dkt. No. 117 ¶¶ 83–91. In particular, Meridian alleges that Pence breached his duties of care, loyalty, honesty, and fidelity. *Id.* at ¶¶ 83–84. Additionally, Meridian contends that Pence improperly usurped corporate opportunities. *Id.* at ¶ 85. Both officers and directors owe a fiduciary duty to the corporation, and their actions must be for the benefit of the corporation. *Marwil v. Grubbs*, No. 03-CV-1165, 2004 WL 2278751, *7 (S.D. Ind. Sept. 30, 2004) (Hamilton, J.). "The fiduciary must deal fairly, honestly, and openly with his corporation . . . [and] must not be distracted from the performance of his official duties by personal interests." *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 240 (Ind. 2001). The personal liability of corporate officers is determined by common law rules of agency. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1231 (Ind. 1994). The duties of a corporate director are determined by statute. *Id.* Standards

for director conduct are set forth in the Indiana Business Corporation Law ("IBCL"). IND. CODE § 23-1-35-1 (2010).

### a. Duties as a Director

The IBCL requires that a director act in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, in a manner reasonably believed to be in the best interests of the corporation. IND. CODE § 23-1-35-1(a) (2010). Directors may be held liable for breaches of their fiduciary duties when "the breach or failure to perform constitutes willful misconduct or recklessness." IND. CODE § 23-1-35-1(e) (2010). The IBCL is strongly pro-management, and the Court starts with a presumption that directors satisfied their duty. *See Shepard v. Meridian Ins. Grp., Inc.*, 137 F. Supp. 2d 1096, 1103 (S.D. Ind. 2001) (Hamilton, J.); *see also In re ITT Derivative Litigation*, 932 N.E.2d 664, 670 (Ind. 2010).

"It has been suggested that the director's judgment should be given the widest leeway when the subject matter is the operation of the business or the approval of transactions that affect the ownership or structure of the business." *G&N Aircraft*, 743 N.E.2d at 240. The restructuring of OCMC's business to divert the Adult Chat Business clearly falls within this category of director activity. However, this does not give a director the right to engage in willful misconduct freely. *See* IND. CODE § 23-1-35-1(e) (2010). In this case, Meridian has introduced evidence suggesting that Pence's communications to OCMC salespeople regarding OCMC's wish to divest itself of the Adult Chat Business were unapproved and contrary to the Board's actual position. Dkt. 447 Ex. 1 ¶¶ 4–5. The parties dispute whether the transfer of the Adult Chat Business in fact harmed OCMC, but this

clearly is a question of fact to be determined by a jury. The Court concludes that this evidence is sufficient to create a genuine issue of material fact as to Pence's possible breach of his fiduciary duties as a director of OCMC. Therefore, Pence's Motion for Summary Judgment is **DENIED** on this claim.

### b. Duties as an Officer

Officer duties are determined by common law. *Winkler*, 638 N.E.2d at 1231. A corporate officer "must refrain from actively and directly competing with [the corporation] for customers and employees and must continue to exert his best efforts on" the corporation's behalf. *Kopka, Landau & Pinkus v. Hansen*, 874 N.E.2d 1065, 1070 (Ind. Ct. App. 2007). Additionally, as the corporation's agent, corporate officers may not "actively exploit their positions within the corporation for their own personal benefits" or "hinder the ability of the corporation to conduct the business for which it was developed." *Am. Commercial Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 948 n.6 (S.D. Ind. 2008) (Barker, J.) (citing *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003)). The parties dispute the effect Pence's activities, both with BT&M and with regards to the transfer of the Adult Chat Business, had on OCMC, as well as what, if any, personal benefit Pence gained from participating in these transactions. *Compare* Dkt. No. 423-13, 423-14, *with* Dkt. No. 426-2. Meridian has presented evidence sufficient to create a genuine issue of material fact as to whether Pence's activities were in breach of his fiduciary duties as an officer of OCMC.

As an alternative ground for finding a breach of fiduciary duties, Meridian asserts that Pence usurped OCMC's corporate opportunities through his activities with BT&M. Dkt.

No. 117 ¶ 85.  "The general rule is that the fiduciary cannot lure away corporate business or clients which in equity and fairness belongs to his corporation."  *Hartung v. Architects Hartung/Odle/Burke, Inc.*, 301 N.E.2d 240, 244 (Ind. Ct. App. 1973).  In describing usurpation of corporate opportunities, the Indiana Court of Appeals has stated:

> When a business opportunity comes to a corporate officer or director in his individual capacity rather than in his official capacity, and the opportunity is one which, because of the nature of the enterprise, is not essential to his corporation, and is one in which [the corporation] has no interest or expectancy, the officer or director is entitled to treat the opportunity as his own . . . if, of course, the officer or director has not wrongfully embarked the corporation's resources therein . . . On the other hand, . . . if there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or reasonably expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself.

*Kirtley v. McClelland*, 562 N.E.2d 27, 33 (Ind. Ct. App. 1990) (citing *Guth v. Loft, Inc.*, 5 A.2d 503, 510–11 (Del. 1939)).  Pence contends that, although BT&M was engaged in activities related to the telecommunications industry generally, the consulting work done by BT&M was not in the line of OCMC's business and, in any event, actually benefitted OCMC.  *See* Dkt. No. 426 at 6.  However, since the Hall Entities were OCMC's clients and Pence gained business from them at least in part as a result of his position at OCMC, the Court concludes that there is a genuine issue of material fact as to whether Pence's activities with BT&M constitute usurpation of corporate opportunities.  Therefore, Pence's Motion for Summary Judgment as to breach of fiduciary duties as an officer is **DENIED**.

## 2.  CONVERSION

Meridian alleges that Pence and others converted OCMC's property.  Dkt. No. 117 ¶¶ 93–96.  In particular, Meridian contends that Pence converted three categories of property: a laptop and BlackBerry belonging to OCMC ("physical property"), emails containing proprietary information, and a life insurance policy.  Dkt. No. 467 at 7–8.  The elements necessary to establish a civil cause of action for conversion are similar to those in the criminal conversion statute and, like all civil claims, must be proven by a preponderance of the evidence.  *McKeighen v. Daviess Cnty. Fair Bd.*, 918 N.E.2d 717, 723 (Ind. Ct. App. 2009).  To prove conversion, a plaintiff must demonstrate that the defendant "exert[ed] unauthorized control over property of another[.]" IND. CODE § 35-43-4-3 (2010).  Unlike with criminal conversion, mens rea is not an element of tortious conversion.  *Nat'l Assoc. of Sys. Adm'rs, Inc. v. Avionics Solutions, Inc.*, No. 06-CV-159, 2008 WL 140773, *14 (S.D. Ind. Jan. 20, 2008) (Barker, J.).

The Court turns first to Meridian's allegations of conversion of the physical property.  Pence contends that his possession of the physical property was not conversion because he was in lawful possession of the physical property previously and returned it to Meridian as soon as it was requested.  Dkt. No. 469 at 14–15.  When the initial possession of property is lawful, conversion occurs only after an unqualified demand for return of the property.  *Coffel v. Perry*, 452 N.E.2d 1066, 1069 (Ind. Ct. App. 1983); *see also N. Elec. Co., Inc. v. Torma*, 819 N.E.2d 417, 429 (Ind. Ct. App. 2004) (applying similar rule with employee's retention of property at the end of his employment).  However, when "a party clearly converts property to his own use, no demand is necessary."  *O.K. Sand & Gravel, Inc. v. Martin Marietta Corp.*, 786 F. Supp. 1142, 1451–52 (S.D. Ind. 1992) (quoting *French*

*v. Hickman Moving & Storage*, 400 N.E.2d 1384, 1389 (Ind. Ct. App. 1980)).  There is no dispute that, while employed with OCMC, Pence's possession of the physical property was lawful.  Additionally, Meridian has designated no evidence contradicting Pence's assertion that he returned the physical property as soon as Bernard told him that Meridian was looking for it.  Dkt. No. 458-2 at 10–11.  Meridian has designated no evidence that it requested the property directly from Pence.  However, the parties disagree whether Pence should have known that his possession of the physical property was no longer authorized based on the termination of his employment.  Viewing the evidence in the light most favorable to Meridian as the non-moving party, the Court concludes that a genuine issue of material fact exists as to conversion of the physical property.  Pence's Motion for Summary Judgment as to the conversion of physical property is, therefore, **DENIED**.

Meridian further alleges that Pence deleted emails from the OCMC server, thus "converting" the proprietary information in them.  Under certain circumstances, intangible electronic records can be converted through deletion.  *See, e.g.*, *Thyroff v. Nationwide Mut. Ins. Co.*, 864 N.E.2d 1272, 1278 (N.Y. 2007) (In response to certified question from the Second Circuit, New York Court of Appeals concluded there was a cause of action for conversion based on deletion of "electronic computer records and data," including emails.); *see also generally FMC Corp. v. Capital Cities/ABC Inc.*, 915 F.2d 300, 304–05 (7th Cir. 1990) (recognizing conversion based on the information contained in intangible property). In this case, the parties vehemently dispute whether Pence in fact deleted emails and, if so, whether OCMC has any possessory interest in those emails.  *Compare* Dkt. No. 447-10 at 4, *with* Dkt. Nos. 458-3, 458-4.  These are factual disputes that are inappropriate for the Court to decide on summary judgment.  Therefore, the Court concludes that there is a

genuine issue of material fact as to Meridian's conversion claim based on the emails. Pence's Motion for Summary Judgment as to conversion of the emails also is **DENIED**.

Turning to Pence's alleged conversion of the life insurance policy, Meridian submits deposition testimony from Ms. Good stating her belief that Pence instructed Bernard to cash in his life insurance policy without informing the Board. Dkt. No. 424-1 at 14, 106. However, Ms. Good's deposition does not include the basis for her belief, and Meridian fails to designate any other evidence regarding Pence cashing in the life insurance. "Although a nonmoving party's own deposition may constitute affirmative evidence to defeat summary judgment, conclusory statements in the deposition do not create an issue of fact." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). The Court concludes that Meridian has failed to designate evidence demonstrating a genuine issue of material fact as to Pence's conversion of the proceeds of the life insurance policy, and Pence's Motion for Summary Judgment as to conversion of the life insurance policy is, therefore, **GRANTED**.

### 3. INDIANA CRIME VICTIM'S RELIEF ACT

In its Complaint, Meridian alleges five bases for liability under the Indiana Crime Victim's Relief Act ("ICVRA")—criminal conversion, theft, criminal mischief, deception, and computer tampering. *See* Dkt. No. 117 ¶¶ 97–117. In its response to the Motion for Summary Judgment, Meridian subsequently withdrew its claim of criminal mischief.[15] Dkt. No. 447 at 37. Therefore, the Court addresses criminal conversion, theft, deception, and computer tampering in turn.

---

[15] Pence's Motion for Summary Judgment on Meridian's criminal mischief-based ICVRA claim is **DENIED as moot**.

ICVRA provides relief to persons who suffer a pecuniary loss based on violation of the provisions of Indiana Code § 35-43. IND. CODE § 34-24-3-1 (2010). *See also* IND. CODE §§ 35-43-4-3 (criminal conversion), -4-2 (theft), -5-3 (deception), -1-4 (computer tampering). A criminal conviction for the underlying misconduct is not necessary to maintain an action for associated ICVRA civil penalties. *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 851 (S.D. Ind. 2005) (Tinder, J.). An ICVRA plaintiff must prove violation of relevant criminal prohibitions only by a preponderance of the evidence. *Id.* As a penal statute, the ICVRA is to be strictly construed by the courts. *Columbus Med. Servs. Org., LLC v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 98 (Ind. Ct. App. 2009).

Count III seeks to impose ICVRA liability based on criminal conversion. Dkt. No. 117 ¶¶ 98–101. To prove criminal conversion, the plaintiff must show all the elements of tortious conversion are present. IND. CODE § 35-43-4-3 (2010). However, the plaintiff need not show that it made an unqualified demand for the return of the property. *See Lambert Enters., Inc. v. Yellowbird, Inc.*, 496 N.E.2d 406, 409–10 (Ind. Ct. App. 1986). In addition, the plaintiff must show that the defendant's conduct was knowing or intentional. *Id.* As discussed above, there remains a genuine issue of material fact as to civil conversion of the physical property and the emails. As a general rule, "where the defendant's motive or state of mind is an essential element of a plaintiff's case, a court must be circumspect in granting summary judgment based solely on the defendant's categorical denial that the requisite mental state existed." *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989). Meridian has brought forth evidence from which a reasonable jury could infer that Pence knowingly or intentionally exerted control over the

17

property at issue. *See, e.g.*, Dkt. No. 458-2 at 10–11. Therefore, the Court concludes that summary judgment on Meridian's conversion-based ICVRA claim is inappropriate at this time and therefore **DENIES** Pence's Motion for Summary Judgment on this claim.

In Count IV, Meridian seeks ICVRA liability based on theft. Dkt. No. 117 ¶¶ 103–06. To prove theft, a plaintiff must show that the defendant engaged in criminal conversion with the intent to deprive another person of the value of the property at issue. IND. CODE § 35-43-4-2 (2010). As discussed above, the Court concludes that a genuine issue of material fact exists as to criminal conversion. Intent to deprive may be proven by unauthorized possession combined with "the totality of circumstances surrounding the events" of a case. *Collins v. State*, 348 N.E.2d 413, 415 (Ind. Ct. App. 1976) (citing *Robinson v. State*, 271 N.E.2d 727 (Ind. 1971) and *Tuggle v. State*, 252 N.E.2d 796 (Ind. 1969)). Viewing the evidence in the light most favorable to Meridian, the Court concludes that a genuine issue of material fact exists as to whether Pence (1) converted the property at issue and (2) intended to deprive OCMC of the property's value. Therefore, summary judgment on Meridian's theft-based ICVRA claim is **DENIED**.

Count VI seeks deception-based ICVRA liability. Dkt. No. 117 ¶¶ 114–17. ICVRA liability for deception may be imposed when the defendant knowingly or intentionally makes a false or misleading written statement with the intent to obtain property. IND. CODE § 35-43-5-3 (2010). Therefore, the key issue on summary judgment is whether Pence made a false or misleading written statement to obtain OCMC property. Meridian contends that Pence made a false or misleading written statement when he communicated to Hall that OCMC did not want the Adult Chat Business anymore, as well as allowing others to communicate the same information. Dkt. No. 447 at 36–37. However, Meridian's

designated evidence indicates that this information was communicated to Hall during phone conversations. *See* Dkt. No. 447-4 at 2–3. Deception specifically requires a *written* statement. *See* IND. CODE § 35-43-5-3 (2010); *see also* Dkt. No. 485 at 16. Because Meridian has not shown a false or misleading written statement, Pence's Motion for Summary Judgment on Meridian's deception-based ICVRA claim is **GRANTED**. *Accord. Ortiz*, 94 F.3d at 1124 (requiring summary judgment when non-moving party fails to bring forth evidence on element for which it has the ultimate burden of proof).

Finally, Count VII seeks to impose ICVRA liability based on computer tampering. Dkt. No. 117 ¶¶ 119–21. It appears that this allegation also is based on Pence's alleged deletion of emails. *See* Dkt. No. 447 at 38. To prove computer tampering, a plaintiff must show that the defendant "knowingly or intentionally alter[ed] or damage[d] a computer program or data, which comprises a part of a computer system or computer network without the consent of the owner of the computer system or computer network[.]" IND. CODE § 35-43-1-4(b) (2010). The statutory definitions of "data" and "computer system" are conceivably broad enough to encompass the activity alleged in this case. *See* IND. CODE §§ 35-43-1-4, -2-3 (2010). However, it is questionable whether Indiana courts would interpret the computer tampering statute so broadly.[16] Given the dearth of Indiana cases interpreting this issue under the computer tampering statute—the parties have not cited any, and the Court has been unable to locate any—the Court is unprepared to rule on the scope of the computer tampering statute and, therefore, whether Meridian can recover

---

[16] Such a broad interpretation of the computer tampering statute may not provide constitutionally adequate notice to potential violators. *See City of Chi. v. Morales*, 527 U.S. 41, 56 (1999) (a criminal statute may violate due process guarantees for failing to prove sufficient notice for ordinary people to understand the conduct that it prohibits); *see also Healthscript, Inc. v. State*, 770 N.E.2d 810, 815–16 (Ind. 2002) (same).

under the ICVRA as a matter of law. Because two potential bases for liability under ICVRA—criminal conversion and theft—remain in the case, the Court concludes that defining the contours of the computer tampering statute is unnecessary at this time.[17] The Court will reevaluate the computer tampering count if developments at trial render interpretation necessary.

## 4.  COMPUTER FRAUD AND ABUSE ACT

Meridian alleges that Pence and others committed violations of the Computer Fraud and Abuse Act ("CFAA"), 18 United States Code Section 1030, by damaging OCMC's protected computers.  Dkt. No. 117 ¶¶ 123–28.  In particular, Meridian's complaint seeks to invoke the civil penalties under CFAA, which allow for recovery of compensatory damages (limited to economic damages) for violations of CFAA criminal prohibitions when the resulting damage is valued at $5000 or more.  18 U.S.C. § 1030(g) (2010); *see also id.* at (c)(4)(A)(i)(I) (establishing $5000 minimum damage requirement).  A person violates CFAA by "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer."  18 U.S.C. § 1030(a)(5)(A)(i) (2010).  For CFAA purposes, transmission can be accomplished either over the Internet or through a physical medium such as a compact disc.  *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 420 (7th Cir. 2006).

---

[17]  A jury finding of liability for either criminal conversion or theft under ICVRA could render Meridian's computer tampering count moot, as damages would overlap with those for either conversion or theft if deletion of emails serves as the basis for liability.  *Cf.* IND. CODE § 34-24-3-1 (2010) (permitting recovery only of three times actual damages).

Pence challenges Meridian's CFAA claim in two ways. First, he asserts that there is no evidence that he deleted any data from an OCMC computer. Dkt. No. 426 at 6. Second, Pence contends that even if deletion of data occurred, there was no damage to OCMC's computers. *Id.*; *see also* Dkt. No. 424 at 21–22. Because the statute defines "damage" to include "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8) (2010), the Court concludes that Pence's second argument must fail, as deletion of files impairs the availability of data and, as such, is covered under the statute. *See, e.g.*, *Monson v. Whitby Sch., Inc.*, No 3:09-CV-1096, 2010 WL 3023873, at *3 (D. Conn. Aug. 2, 2010) (under some circumstances, deletion of an employee's own email can give rise to a CFAA claim); *see also Condux Int'l, Inc. v. Haugum*, No. 08-4824, 2008 WL 5244818, at *8 (D. Minn. Dec. 15, 2008) (same with deletion of evidence of computer use).

Because the deletion of an employee's emails can serve as the basis for a CFAA claim in certain circumstances, the issue becomes whether Meridian has brought forth evidence that Pence in fact deleted emails without authorization. The Seventh Circuit recognizes that previously authorized use of a computer system may become unauthorized when an employee breaches his duty of loyalty to his employer. *Citrin*, 440 F.3d at 420–21. To substantiate its CFAA claim, Meridian has presented a report from Tribridge ("Tribridge Report") suggesting that between May 10 and May 11, 2006, Pence's email box on the server was reduced in size by ninety-eight percent. *See* Dkt. No. 447-10 at 4. Viewing this evidence in the light most favorable to Meridian, the non-moving party, a reasonable jury could conclude that Pence deleted the email in question. Pence has presented evidence questioning the methodology and conclusions of the Tribridge Report. *See* Dkt. Nos. 458-

3, 458-4.  However, this evidence merely confirms that there exists a genuine issue of material fact as to whether Pence in fact deleted email without authorization in violation of CFAA.  Therefore, summary judgment is **DENIED** on Meridian's CFAA claim.

### 5.  TORTIOUS INTERFERENCE WITH CONTRACT

Meridian contends that Pence tortiously interfered with OCMC's existing contracts with its customers and vendors to further his own business opportunities.  Dkt. No. 117 ¶¶ 130–34.  Indiana courts recognize a cause of action for tortious interference with contract when a defendant "induces a party to a contract to break it, intending to injure another person or to get benefit for himself . . . [without] sufficient justification for the interference." *Bragg v. City of Muncie*, 930 N.E.2d 1144, 1147 (Ind. Ct. App. 2010).  To prove tortious interference with contract, the plaintiff must show that a valid contract was in place, the defendant knew about the contract, defendant's intentional inducement, and lack of justification.  *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 118 (Ind. Ct. App. 2008).  Establishing a lack of justification requires a showing that "the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Bilmoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156–57 (Ind. Ct. App. 2005).  In evaluating the justification, the court seeks to determine whether the defendant's conduct was "fair and reasonable under the circumstances."  *Id.* at 156.

Even viewing the evidence in the light most favorable to Meridian, there is no evidence that any contract between OCMC and a third party was broken, let alone that Pence induced the breaking of a contract.  Meridian claims that Pence and others

"interfered" with OCMC's contracts by diverting contract opportunities to the Hall Entities. *See* Dkt. No. 447 at 39. In other words, Meridian seeks liability for tortious interference with contract based on prospective contracts. However, an action for tortious interference with contract cannot lie without an existing contract. *See Allison*, 883 N.E.2d at 118 (requiring "existence of a valid and enforceable contract"). Therefore, Pence's Motion for Summary Judgment on Meridian's tortious interference with contract claim is **GRANTED**.


### 6. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

In addition to tortious interference with contract, Meridian contends that Pence's activities amount to tortious interference with business relationships. Dkt. No. 117 ¶¶ 136–41. The elements of tortious interference with a business relationship are similar to the elements of tortious interference with contract: the existence of a business relationship, defendant's knowledge of that relationship, intentional interference with the relationship through unlawful acts, absence of justification, and damages. *Bridgestone/Firestone, Inc. v. Lockhart*, 5 F. Supp. 2d 667, 686 (S.D. Ind. 1998) (Hamilton, J.). The illegality of the acts causing the interference is important, as "this tort requires some independent illegal action." *Brazauskas v. Ft. Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003); *see also Great Escape, Inc. v. Union City Body Co., Inc.*, 791 F.2d 532, 542 (7th Cir. 1986). Sufficiently "wrongful" conduct, such as a breach of fiduciary duty, can satisfy the requirement of independent illegal action. *See Economation, Inc. v. Automated Conveyor Sys., Inc.*, 694 F. Supp. 553, 557 (S.D. Ind. 1988) (Tinder, J.).

As discussed above, Meridian has created a genuine issue of material fact as to whether Pence breached his fiduciary duties to OCMC. Additionally, it is undisputed that

OCMC had business relationships with the customers whose accounts were transferred to the Hall Entities and Pence knew of the existence of those relationships. Pence claims that his actions were justified. Dkt. No. 426 at 6. While "the existence of a legitimate reason for the defendants' actions will provide the necessary justification to preclude judgment for the plaintiff in the tort action," *Economation*, 694 F. Supp. at 562 (citing *Flintridge Station Assoc. v. Am. Flectcher Mtg. Co.*, 761 F.2d 434, 441 (7th Cir. 1985)), there is clearly a genuine dispute regarding whether the transfer of the Adult Chat and Fat Finger Businesses to the Hall Entities actually benefitted OCMC such that the transfers were justified. *Compare* Dkt. No. 423-13, 423-14, *with* Dkt. No. 426-2. Therefore, Pence's Motion for Summary Judgment on Meridian's tortious interference with business relationships claim must be **DENIED**.

## 7.  INDIANA UNIFORM TRADE SECRETS ACT

Meridian initially brought a claim under the Indiana Uniform Trade Secrets Act. Dkt. No. 117 ¶¶ 142–47. However, Meridian subsequently has withdrawn this claim. Dkt. No. 447 at 40. Therefore, Pence's Motion for Summary Judgment on this claim is **DENIED as moot**.

## 8.  UNFAIR COMPETITION

Meridian further alleges that Pence's activities amount to unfair competition against OCMC. Dkt. No. 117 ¶¶ 149–51. Based on Meridian's briefing, it appears that the substance of these allegations arises from Hall's actions and Pence's alleged conspiring with Hall. *See* Dkt. No. 447 at 42. However, this is of no moment, as participants in a

conspiracy may be liable for activities of coconspirators taken in furtherance of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 645 (1946). Indiana law recognizes that "[t]he goodwill of a business which includes confidential customer information is a protectable interest by contract or against a conspiracy to appropriate it by unlawful acts." *Woodward Ins., Inc. v. White*, 437 N.E.2d 59, 67 (Ind. 1982) (citing *Miller v. Ortman*, 136 N.E.2d 17, 34 (Ind. 1956)). To this end, "the tort of unfair competition has been considered 'subspecies of the class of torts known as tortious interference with business or contractual relations.'" *Landeen v. PhoneBILLit, Inc.*, 519 F. Supp. 2d 844, 868 (S.D. Ind. 2007) (McKinney, C.J.) (citing *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001)). There are multiple factual scenarios that might give rise to an unfair competition claim, *see Felsher*, 755 N.E.2d at 598 (discussing Prosser's open-ended definition of the unfair competition tort), and it is not clear from the complaint under which theory Meridian intends to proceed. However, in their briefs, both Meridian and Pence discuss two possible formulations of an unfair competition tort— the *Woodward Insurance* and *Felsher* formulations. Therefore, the Court proceeds to determine whether Meridian's claim can survive summary judgment under either of these formulations.

Under *Woodward Insurance*, a claim for unfair competition may be brought when the employee uses "trade secrets or other confidential information acquired in the course of his employment for his benefit or that of a competitor in a manner which is detrimental to his former employer." *Woodward Ins.*, 437 N.E.2d at 67. Under this formulation, the focus is largely on whether there were efforts by the employer to keep the information at issue confidential. *Id.* at 67–69 (unfair competition tort "contemplates the use of trade secrets or confidential information that is not available to anyone except a trusted employee."). In this

case, the purported "confidential information" is the identities of OCMC's customers. However, there is no evidence that OCMC took steps to keep this information confidential. Therefore, the Court concludes Meridian has not brought forth evidence sufficient to create a genuine issue of material fact under the *Woodward Insurance* formulation of unfair competition. *Accord. Ortiz*, 94 F.3d at 1124 (requiring summary judgment when non-moving party fails to bring forth evidence on element for which it has the ultimate burden of proof).

In the alternative, a cause of action for unfair competition arises when there is "any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off goods or business of one person as and for that of another." *Felsher*, 755 N.E.2d at 598 (citing *Hartzler v. Goshen Churn & Ladder Co.*, 104 N.E. 34, 37 (1904)).[18] The designated evidence does not suggest that Pence or others attempted to "pass off" the services being provided as being from OCMC when they were actually from BT&M or the Hall Entities. *See, e.g.*, Dkt. No. 447-11 at 24 (discussing calls between customers, Hall,

_____

[18]The *Felsher* court recognizes that the tort of unfair competition may be broader than simply "passing off":

> Unfair competition . . . does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts. The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values.

755 N.E.2d at 598 (citing W. Page Keeton, *Prosser and Keeton on the Law of Torts* 1015 (5th ed. 1984)). Specific types of unfair competition recognized under the *Felsher* formulation include "passing off," trade name infringement, trademark infringement, and price fixing. *See generally Keaton & Keaton v. Keaton*, 842 N.E.2d 816, 819–21 (Ind. 2006). However, the Court has not found any cases expanding the tort of unfair competition to encompass all claims of tortious interference with business relationships, and the Court declines to create an additional basis for liability that has not been previously recognized under Indiana law. *Accord. Ind. Grocery Co., Inc. v. Super Valu Stores, Inc.*, 684 F. Supp. 561, 580–81 (S.D. Ind. 1988) (McKinney, J.) (limiting unfair competition to "claims of passing off and other similar situations involving consumer deceit."). Based on the facts of this case, the Court concludes that the "passing off" analysis is the only applicable basis in this for unfair competition liability under the *Felscher* formulation.

and OCMC personnel); Dkt. No. 424-12 at 97–99 (discussing transfer of customers to the Hall Entities).  In particular, Meridian has not designated any evidence suggested that Pence or other intended to "deceive" customers as to the true source of the services that they were provided.  *See, e.g.*, Dkt. No. 424-12 at 45 (discussing how customers calling OCMC would be referred to Navicomm).  Accordingly, the Court concludes that, under either *Woodward Insurance* or *Felscher*, there is not a genuine issue of material fact. Pence's Motion for Summary Judgment on the unfair competition claim is, therefore, **GRANTED**.

## 9.  UNJUST ENRICHMENT

Meridian seeks quantum meruit recovery based on the alleged unjust enrichment of the Hall Entities at OCMC's expense.  Dkt. No. 117 ¶¶ 153–59.  In particular, Meridian alleges that Pence and others improperly transferred the Adult Chat Business to Navicomm and received significant payments from Navicomm that should have gone to OCMC instead of Pence.  *Id.* at ¶¶ 153–55.  To recover under a theory of unjust enrichment, "a party must show that a measurable benefit has been conferred on a party under such circumstances that retention of the benefit without payment would be unjust."  *Stoneware, Inc. v. TecServ, Inc.*, No. 07-CV-1188, 2009 WL 5175193, at *8 (S.D. Ind. Dec. 21, 2009) (Barker, J.).  In other words, unjust enrichment recovery is possible only where disgorgement of the benefit received by the defendant is possible.  *See Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, No. 09-CV-340, 2010 WL 4751659, at * 8–*9 (S.D. Ind. Nov. 16, 2010) (Barker, J.).  In addition, Indiana law only permits recovery under the equitable principle of unjust enrichment when no adequate remedy at law exists.  *King v. Terry*, 805 N.E.2d 397, 400

(Ind. Ct. App. 2004); *see also Indiana ex rel. Zoeller v. Pastrick*, 696 F. Supp. 22 970, 981 n.7 (N.D. Ind. 2010) (same).

To prevail on its unjust enrichment claim, Meridian must show that Pence has retained a benefit rightly belonging to OCMC. *Accord. Lady Di's*, 2010 WL 4751659, at *9. However, no evidence has been introduced that Pence has retained any benefit gained as a result of the transfer of business to the Hall Entities. The only conceivable "benefit" conferred on Pence as a result of the transfer of business to the Hall Entities is the loan from the Hall Entities to BT&M to allow Pence, Benge, and Bernard to meet the capital call, and the evidence shows that the proceeds of this loan were given to OCMC. *See* Dkt. No. 442-19 at 237–40. Despite repeated accusations to the contrary, Meridian has not brought forth any evidence suggesting that funds given to BT&M by the Hall Entities should have, in fact, gone to OCMC. Pence's Motion for Summary Judgment on the unjust enrichment claim is **GRANTED**.

## 10. CIVIL CONSPIRACY

Lastly, Meridian alleges that Pence and others engaged in a civil conspiracy and seeks to hold Pence personally liable for the actions taken by all of the other defendants. Dkt. No. 117 ¶¶ 161–65. Under Indiana law, there is no separate cause of action for civil conspiracy, only for "damages resulting from civil conspiracy" based on concerted tortious action. *K.M.K. v. A.K.*, 908 N.E.2d 658, 663 (Ind. Ct. App. 2009). As such, civil conspiracy cannot form the basis for a separate count of liability. Pence is, therefore, **GRANTED** summary judgment on Meridian's count of civil conspiracy.

## IV.  CONCLUSION

For the foregoing reasons, Pence's Motion for Summary Judgment (Dkt. No. 425) is **GRANTED in part** as to civil conversion of the life insurance, deception-based ICVRA liability (Count VI), tortious interference with contract (Count IX), unfair competition (Count XII), unjust enrichment (Count XIII), and civil conspiracy (Count XIV).  As Meridian has agreed to withdraw its claims for criminal mischief-based ICVRA liability (Count V) and liability under the Indiana Uniform Trade Secrets Act (Count XI), Pence's Motion as to these counts is **DENIED as moot**.  Pence's Motion is **DENIED** as to all other allegations.

IT IS SO ORDERED this 14th day of January 2011.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

George William Bills Jr.
LAW OFFICE OF G. WILLIAM BILLS,
JR.
gwilliambills@yahoo.com

Kathleen A. Gallagher
ECKERT SEAMANS CHERIN &
MELLOTT LLC
kgallagher@eckertseamans.com

Sandy B. Garfinkel
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
sgarfinkel@eckertseamans.com

Gregg  Heinemann Jr.
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
gheinemann@eckertseamans.com

Max W. Hittle Jr.
KRIEG DEVAULT, LLP
mhittle@kdlegal.com

Carol Nemeth Joven
PRICE WAICUKAUSKI & RILEY
cnemeth@price-law.com

Thomas  Livingston
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
thomas_livingston@fd.org

C. Kent May
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
kmay@eckertseamans.com

Craig Morris McKee
WILKINSON GOELLER MODESITT
WILKINSON & DRUMMY
cmmckee@wilkinsonlaw.com

Stephen S. Stallings
STALLINGS LLC
sstallings@stallings-law.com

Jana K. Strain
GEIGER CONRAD & HEAD, LLP
jana.strain@gch-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com

Ann Marie Waldron
awaldron@rwylaw.com

John H. Williams Jr.
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
jwilliams@eckertseamans.com

SCOTT HALL
308 Blue Quail Ct.
Bedford, TX 76021